## FAISON v. FAISON.
### No. 10709.

Court of Civil Appeals of Texas. Dallas.
July 19, 1930.

Rehearing Denied Oct. 18, 1930.

Claude C. Westerfeld, of Dallas, for appellant.

Muse & Muse, of Dallas, for appellee.

JONES, C. J.

From an adverse judgment in a district court of Dallas county, appellant, J. H. Faison, has prosecuted an appeal to this court. The judgment was rendered on a suit instituted by appellant against his wife, Edna Faison, appellee, for a divorce on specific grounds of cruel treatment; for the cancellation of two deeds by appellant to appellee, each conveying to her their community homestead; and for a partition of their community estate, alleged to consist of the property made the subject of the two deeds and their household and kitchen furniture. Appellee contested appellant's right to a divorce and filed a cross-action, seeking a divorce in her own right, praying that the real estate be adjudged her separate property, and praying that in any event it be set aside to her as a homestead. The following is a sufficient statement of the case:

Appellant and appellee were married in 1901, and one child, a son, was born as the fruit of such marriage. This son had reached his majority before the suit was filed. Appellee's mother, an aged and invalid lady, lived in this home during the latter part of the married life of the parties. On March 14, 1910, the land in suit was acquired by warranty deed from Marietta L. Kniffin, for a consideration of $2,320 recited as paid in cash, but which sum actually represented the value of other property accepted by the grantor in lieu of cash, and the additional consideration of the execution of a note by the grantee and his wife in the sum of $1,678.67, secured by a vendor's lien on the land. The deed was taken in the name of appellant. There was a five-room house located on the property, into which the family moved, and it became their homestead.

On March 28, 1914, appellant, by general warranty deed, conveyed this land to appellee. The first clause of this deed recites the consideration, and is as follows:

"That I, J. H. Faison, of the County of Dallas, State of Texas, for and in consideration of the sum of One Dollar to be paid, and secured to be paid, by my wife, Edna L. Faison, and the further consideration of love and affection I hold for my wife and the assumption of a certain vendor's lien note by the said Edna L. Faison, dated the 14th day of March, 1910, signed by myself and Edna L. Faison, due in five years after date bearing interest at the rate of 8% per annum, payable semi-annually, said note being for $1678.67, payable to the order of Marietta L. Kniffin, said note providing for 10% attorney fees, being secured by a vendor's lien on the property herein conveyed and also by deed of trust to J. P. Murphy, Trustee, dated March 14, 1910, have granted, sold, and conveyed, and by these presents do grant, sell and convey, unto the said Edna L. Faison of the County of Dallas, State of Texas, as her part of her separate estate, all that certain tract or parcel of land situated in the County of Dallas, and being particularly described as follows, etc."

The land described in this deed is all of the land described in the Kniffin conveyance.

Soon after the execution of this deed, that portion of the lot on which was situated the five-room house was sold. The record does not disclose. the exact date of this sale. Appellant testified that, "I sold that piece of property to take care of this note that was against it," referring to the note executed for the purchase price. It is shown that another residence, consisting of a story and a half house, and costing approximately $2,500, was erected on the portion of the lot retained, and thereafter used as the home of the family. For the purpose of building this house, a mechanic's lien was executed on May 1, 1914, in the sum of $1,350, and recites that a cash payment of $430 was made on the improvements. It appears that on this date no other lien existed against the property. It is a necessary inference that some time between the date of March 28, 1914, the date of the deed of appellant to appellee, and May 1, 1914, the date of the execution of the mechanic's lien, the deed to the portion of the lot sold was executed and the vendor's lien note paid from the proceeds of such sale. The mechanic's lien note was transferred to the United Savings Bank of Detroit, Mich., and the new note executed provided for installment payments. This installment note was fully paid on September 5, 1923, and a release of the mechanic's lien securing it was executed on such date.

Another mechanic's lien was fixed by the parties against this property on July 25, 1923, the amount thus secured being evidenced by a note for $2,050. This note was duly transferred to the United Savings Bank of Detroit, and another installment note executed in lieu thereof. With this $2,050 the house was remodeled and changed from a story and a half to a two-story house.

In April, 1927, this $2,050 indebtedness had been reduced by the payment of monthly installments to $1,525. The parties decided to erect a two-story garage building at the cost of $575, and in order to do this, the former installment note was taken up, a new lien executed securing a note for $2,100, payable in monthly installments of about $35 per month. Each of these mechanics' liens above described was further secured by a deed of trust, duly executed by appellant and appellee. Except for the original vendor's lien note of $1,350, the payments made on the $2,050 note, and the payments made on the $2,100 note, as well as the cash payment of $430, were made by community funds.

In 1925, friction arose between the parties to mar their married life, and appellée filed a suit for divorce, on the alleged ground of cruel treatment. In this suit she alleged that the real estate in question was her separate property, because of the deed executed by appellant to her in 1914. Appellee lived in the house during the pendency of this suit. In due time. appellant filed his answer, consist-

ing in part of allegations, denying the claim of appellee that the land in question was her separate property, and alleging in effect that, at the time the deed was executed, he was in financial trouble, and on the advice of his attorney, in order to avoid any cloud that might be cast upon the title to their homestead, he made the deed to his wife, for the purpose only of transferring the record title to her, and not with the intention or purpose of changing the status of the property as to ownership; that she was to hold his interest in the property in trust for him, and prayed that the deed be annulled. This suit was passed indefinitely and appellant went to the state of Oklahoma to accept employment. A reconciliation between the parties was had, with the result that the divorce suit was dismissed and a confirmation deed executed by appellant to appellee. This confirmation deed is of date August 15, 1925. The evidence of the parties as to the consideration for this confirmation deed is in conflict, in that appellant testified that it was executed on the promise of appellee that she would abstain from certain specified acts of conduct on her part, which he claimed had disrupted their married life, and that she would not place the deed of record, but would hold it until she determined that she would perform such promise. This is contradicted by appellee. So much of the confirmation deed as is deemed necessary is as follows:

"That I, J. H. Faison, to confirmation deed, Edna L. Faison:

"Whereas, on the 28th day of March, 1914, I, J. H. Faison, by general warranty deed of that date conveyed to my wife, Edna L. Faison, the following described property to-wit: all that certain tract and parcel of land situated in the County of Dallas, State of Texas, and being particularly described as follows: 84x110 feet situated on Adair Street, in the city of Dallas, being off of the North end of a certain tract or parcel of land constituting a portion of the homestead as it now exists of the said H. L. Kniffin and wife, which said tract of land out of which the present 84x110 feet is taken is more particularly described in a deed from the said H. L. Kniffin to the said Marietta L. Kniffin of date December 29, 1904, and recorded in Vol. 329, page 254, Dallas County Records, said 84x110 feet herein conveyed being described as follows: Beginning at a point on Adair Street, at the extreme Northeast corner of said tract of land as deeded by the said H. L. Kniffin to the said Marietta L. Kniffin; thence South 45 West 110 feet; thence North 45 E 110 feet to Adair Street; thence North 45 E 84 feet to place of beginning and the above property being a part of Block 782 according the official map of the City of Dallas.

"Whereas said conveyance to my said wife, as manifest of record in Vol. 614, page 176, of

the Deed Records of Dallas County, Texas, to which reference is here made, and

"Whereas said property above described at the time I conveyed the same to my wife, Edna L. Faison, was part of the community estate of myself and the said Edna L. Faison, and the consideration expressed therein was love and affection for my said wife, and the purpose of this conveyance as recited therein, was to convey said property from community property into the separate property of my said wife; and

"Whereas, in a suit now pending in the 95th District Court of Dallas County, Texas, styled Edna L. Faison vs. J. H. Faison, No. 55954 D, being a suit on the part of my said wife for a divorce and for division of the community estate, I, did in answer to that part of the petition of said Edna L. Faison, wherein she made the claim that the land above described was her separate estate, assert and plead that it was not my intention in executing said deed to part with any interest in said property, but that I executed the same under the advice of counsel in order to protect said property from some sort of threatened lien; and

"Whereas, since the execution of said deed to my wife, Edna L. Faison, certain improvements have been placed upon said lot, and I also in said answer claimed an interest therein, and

"Whereas, it was my intention and purpose at the time of the execution and delivery of said deed to my wife, Edna L. Faison, in consideration of my love and affection for her, to make said property her said separate estate and it has at all times, since been my intention that any and all improvements placed upon said property since said conveyance to her should in like manner become her separate estate, and I was in error in asserting and making the contention I did in said answer to said suit for divorce, and it is now my purpose and intention to confirm as of the date of the execution of said deed, all its recitals and covenants and warranties.

"Now therefore, know all men by these presents:

"That I, J. H. Faison, in consideration of One Dollar and the love and affection in which I hold for my said wife, Edna L. Faison, have granted, sold and conveyed, and by these presents to grant, sell and convey unto the said Edna L. Faison, the land above described and do hereby confirm my former deed in that respect and declare it was my original intention at the time of the execution of the said original deed to make said property and all improvements placed thereon subsequent thereto the separate property of my said wife."

This is followed by a clause of general warranty. Appellant received this deed in Oklahoma, duly executed and acknowledged it in said state on August 7, 1925, and mailed it to appellee. It was filed for record December 15, 1925, in the deed records of Dallas county. After the lapse of perhaps thirty days, the parties again lived together as husband and wife. Previous to the filing of the present suit, appellant again left the home, leaving appellee in possession thereof.

Appellant's grounds for a divorce alleged substantially the doing by appellee of all those acts which he testified she promised to refrain from doing, as a consideration for the deed. Appellee's grounds for a divorce is alleged cruel treatment, the specific allegations of which it is not necessary to state. The case was tried to a jury, submitted on special issues, and such issues, with the findings thereon, are as follows:

"No. 1: Was the defendant Edna Faison guilty of excesses cruel treatment or outrages toward the defendant J. H. Faison of such a nature as to render their living together insupportable? Answer: No.

"No. 2: Was it the intention of the plaintiff and defendant by the execution of the deed of March 28, 1924, to convey plaintiff's one-half interest in the property described therein to the defendant Edna Faison to be held in trust for the plaintiff, J. H. Faison? Answer: No.

"No. 3: Was the second deed of date August 7, 1925 obtained by the defendant Edna Faison from the plaintiff J. H. Faison upon the representations:

"(a) That she (defendant) would resume marital relations? Answer: Yes.

"(b) That she (defendant) would prepare his (plaintiff's) meals and look after the home? Answer: Yes.

"(c) That she (defendant) would quit nagging and abusing plaintiff? Answer: Yes.

"(d) That she (defendant) would quit her raving spells, and that if she took one of such spells she promised to retire to another room until she subsided? Answer: Yes.

"(e) That she (defendant) would not read books all night in bed, as she had theretofore done? Answer: Yes.

"(f) That she (defendant) would not record said deed after he (plaintiff) executed same until she felt sure she could carry out the promises upon which she asked for said deed? Answer: Yes.

"No. 4: Were the representations referred to in subdivisions 'A' to 'F' in the above issue No. 3 fraudulently made by the defendant, Edna Faison, if you find any of such were made? Answer: Yes.

"No. 5: Were such representations, if any you have found, in answer to the preceding issue No. 3 made by the defendant Edna Faison with the intention to perform the same, if any? Answer: Yes.

"No. 6: Did the defendant Edna Faison perform such representations referred to in issue No. 3, or any of same? Answer 'yes' or 'no' as to said subdivisions 'A' to 'F', as you find. Answer: (a) no; (b) no; (c) no; (d) no; (e) no; (f) no.

"No. 7: Did the plaintiff J. H. Faison rely upon said representations, if any, referred to in issue No. 3? Answer: Yes.

"No. 8: Was the plaintiff J. H. Faison induced by reason of said representations, if any you have found in answer to issue No. 3, to execute the second deed of date August 7, 1925? Answer: Yes.

"No. 9: If you have found the representations, or any of them, referred to in issue No. 3, were made by defendant to the plaintiff, did the plaintiff J. H. Faison sustain any damages thereby? Answer: Yes.

"No. 10: What amount of damages, if any, was sustained by the plaintiff J. H. Faison, by reason of the representations, if any, made by the defendant, as referred to in issue No. 3? Answer: $1350.00.

"No. 11: Was the plaintiff J. H. Faison guilty of excesses, cruel treatment or outrages toward the defendant Edna Faison of such a nature as to render their living together insupportable? Answer: Yes."

In rendering judgment the court ignored the findings of the jury on special issues Nos. 3 to 10, inclusive, on the ground, as stated in the judgment, that such issues were "unnecessary, immaterial and unsupported by the evidence." The judgment was rendered on the findings of the jury on issues Nos. 1, 2, and 11. In response to the verdict on these issues, appellee is granted a divorce, title to the land decreed in her, and appellant is divested of any claim or title thereto; certain specifically described personal property, consisting of household and kitchen furniture, is decreed to be the separate property of appellee and she is vested with title thereto; certain specifically described articles of household furniture is decreed to be the personal property of Mrs. Peters, the mother of appellee; certain specifically described household and kitchen furniture is decreed to be the community property of appellant and appellee, and the use of same is awarded to appellee during her natural life, or so long as she should elect to use same; and the real estate in question declared to be the homestead of appellee, and Mrs. Peters is declared to be a constituent member of the family.

Appellant has raised by proper assignments of error all of the questions herein discussed. The assignments of error will not be separately discussed, but they attack the correctness of the judgment in every respect, except as to the decree of divorce.

█ The contention of appellant in reference to the claim for reimbursement on account of expenditures from the community fund for the improvement of the property cannot be sustained. Appellant's pleadings do not show that he sought any such relief. An analysis of these pleadings show that, in respect to the property involved in the suit, appellant sought to have the 1914 deed canceled, because it was only executed in trust and never passed title to appellee of his community interest therein; that he also sought to cancel the 1925 deed, because of a failure of consideration, in that appellee failed to live up to the promises made by her in respect to her future conduct as to their marital relations; that these promises were fraudulently made, with no intention on her part to perform them, but with the sole intention of fraudulently inducing appellant to execute the deed. In the nature of an alternative plea, if the foregoing relief should not be granted, then appellant sought a recovery of $10,000 damages, not as advances made by the community funds, but as one-half of the value of the community property, of which he had been fraudulently deprived of title. As made by appellant's pleadings, the suit cannot be considered as one for an accounting of the community funds and for a recovery of one-half of the community money found to have been expended for improvements on the wife's separate property, and the establishment and foreclosure of an equitable lien on the wife's property.

█ With the nature and purpose of the suit in mind, let us determine the effect of the verdict of the jury on the respective property rights of the parties. The finding of the jury on special issue No. 2, to the effect that the deed of 1914 did not convey appellant's community interest in the property in trust for his benefit, is conclusive of appellant's contention in respect to this deed. It must be construed to be that which its plain terms import, a conveyance to appellee of appellant's interest in the land described therein. Story v. Marshall, 24 Tex. 305, 76 Am. Dec. 106; Belcher Land Mortgage Co. v. Barfield (Tex. Civ. App.) 244 S. W. 395, 396; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Lewis v. Simon, 72 Tex. 470, 10 S. W. 554; Newman v. Newman (Tex. Civ. App.) 86 S. W. 635.

█ It must be borne in mind that appellant and appellee were husband and wife at the time of the execution of the two deeds. It appears from the above-cited authorities, governing the rights of husband and wife under similar conditions, that the status of the property was changed by the 1914 deed, from its former status of community property to that of the separate property of the wife. When a part of this property was subsequently sold, the proceeds of that sale was the separate property of appellee, and when such proceeds were used to discharge the outstanding vendor's lien, the property became the separate property of the wife, unincumbered by any lien or claim in favor of any other person.

This was the status of the property on May 1, 1914, when the first mechanic's lien was duly created as a charge against the property for the purpose of building a residence thereon. The creation of the mechanic's lien did not affect the status of the property as between appellant and appellee. The land, together with the house erected thereon, remained the separate property of appellee, though incumbered by the said lien. The same was true when the second mechanic's lien was created in 1923. The discharge of the first mechanic's lien by community funds did not give to the community any title to this land. At most, it only gave to the community estate a claim in equity for reimbursement of the amount expended in discharge of the lien, and the right to establish an equitable lien against the property, provided it was such property as could be made subject to such lien. This question is not involved in this case and will not be discussed. The same is true in reference to the monthly payments that have been made from the community in partial discharge of the other mechanic's liens.

■ Was it error for the court to ignore the findings of fact made by the jury in response to special issues Nos. 3 to 10, inclusive, and to enter judgment without giving effect to such findings? We do not think so, under the established facts of this case. At the time this conveyance was executed, appellee, the grantee in such conveyance, was the exclusive owner of the legal title to this land, and whether this latter conveyance was valid or invalid in no way affected appellee's title. However, by reason of the fact that certain funds, belonging to the community estate of appellant and appellee, had been used in discharge of the first mechanic's lien, and that the property might be subject to the enforcement of an equitable lien in favor of the said community estate for repayment of such funds so used, there existed a right in appellant legally subject to conveyance. The existence of this right in no way affected the legal title to the land conveyed by the 1914 deed. The deed of 1925 actually conveyed this right to appellee.

The effect of the findings of the jury, ignored by the court, is to invalidate the conveyance of this right to appellee by the 1925 deed, because of the fraud of appellee. The title to the land being in appellee, all that the latter deed conveyed was the claim for reimbursement of the community estate for one-half of the money used to discharge the first mechanic's lien, and any right that might exist to establish an equitable lien to enforce payment. Because of the findings of the jury, above stated, this conveyance is nullified. Appellant's pleadings, as we have found, contained no allegations that would warrant a recovery on such a claim. The court did not err therefore in ignoring findings that could not be made a basis for the judgment.

■ We are of the opinion that, if appellant's pleadings were sufficient to warrant a recovery for appellant's interest in the community funds used in the improvement of appellee's separate estate, no recovery could be had as against appellee's plea of estoppel. This 1925 deed is more than a deed of conveyance. Appellant made therein solemn declarations of existing facts, in reference to his intention when he executed the 1914 deed. These declarations of fact are not set aside or annulled by the findings of the jury that the deed was procured by fraud. In this deed, appellant solemnly declares that, "The purpose of this (1914) conveyance, as recited herein, is to convey said property from community property into the separate property of my said wife." Again it is declared by him, "It was my intention and purpose at the time of the execution and delivery of said deed to my wife, Edna L. Faison, in consideration of my love and affection for her, to make said property her separate estate, and it has at all times since been my intention that any and all improvements placed upon said property since said conveyance to her should in like manner become her separate estate." These are solemn declarations of existing facts in reference to the intention of appellant in executing the deed of 1914. He declares that it was his intention at the time of the use of the community funds for improvement of appellee's property that the improvement should become the separate property of appellee. It cannot be inferred that the fraud practiced on him by appellee could have induced him to solemnly declare that to be his intention, which was not such intention. Nor do we believe that he could be heard to say that fraud induced him solemnly to declare a purpose, in executing the 1914 deed, that was not in fact such purpose at the time. Appellant estopped himself, as a matter of law, to deny the truth of these declarations.

The findings of the jury in response to special issue No. 10, to the effect that appellant had suffered damages in the amount of $1,350, by reason of the fraud practiced upon him by appellee in securing the 1925 deed, must be treated as immaterial, because of the finding of the jury on special issue No. 2, denying appellant's claim that the 1914 deed was executed in trust for the benefit of appellant. In view of the jury's finding on special issue No. 2, the finding on issue No. 10 can form no basis for a judgment.

■ The jury having found that the existing marriage should be annulled because of the wrongs of appellant, the court did not err in decreeing the use of the community furniture to appellee. Hedtke v. Hedtke, 112 Tex. 404, 248 S. W. 21; Helm v. Helm (Tex. Civ. App.) 291 S. W. 648; Woods v. Alvarado Bank (Tex. Sup.) 19 S.W.(2d) 35.

We have carefully examined all of appellant's assignments of error, with the result

that we are of the opinion that none of them present reversible error, and that the judgment of the lower court should be affirmed.

Affirmed.