Affirmed in part and reversed and remanded in part.

**GLASGOW et ux. v. JOHN HANCOCK MUT. LIFE INS. CO.**

No. 12358.

Court of Civil Appeals of Texas. Dallas.

May 14, 1938.

Rehearing Denied June 11, 1938.

J. C. Muse, Jr., of Dallas, for appellants.

Geo. A. Titterington and W. H. Reid, both of Dallas, for appellee.

BOND, Chief Justice.

This appeal is from a judgment of a district court of Dallas County, in favor of John Hancock Mutual Life Insurance Company, and against G. G. Glasgow and wife, for debt and foreclosure of a deed of trust lien on a tract of land—85 x 272.6 feet—known as lot number seven (7), and 5 feet off of lot six (6) in block 21 of the Junius Heights Addition to the City of Dallas, used and occupied by appellants as their homestead.

On July 20, 1926, Glasgow executed and delivered to the John Hancock Mutual Life Insurance Company his note in the principal sum of $5,900, secured by deed of trust on the 85 x 272.6-foot tract, re-arranged and extended by a new note in a like amount, due September 15, 1934; the deed of trust, other than the usual provisions in such instruments, recites:

"The note secured by this deed of trust is given in renewal and extension of three vendor's lien notes for the sum of Four Hundred and no/100 ($400.00) Dollars each, with Forty-Eight and no/100 ($48.-00) Dollars accrued interest therein, of date July 26, 1918, executed by James S. Buchanan and Asenath Myrtilla Allen Buchanan, and due and payable to the order of B. R. Packard three years after date, respectively * * *; also One Hundred Eighty-Six and 54/100 ($186.54) balance due on a certain mechanic's lien note for the sum of Five Hundred Sixty-Seven and 78/100 ($567.78) Dollars, fully described in a certain mechanic's lien contract executed by A. M. A. Buchahan and husband, Jas. S. Buchanan, with the Uvalde Paving Company * * *; also two vendor's lien notes for the sum of Two Thousand Twenty-Two and 21/100 ($2022.21) each, with Four Hundred Twenty-One and 04/100 ($421.04) Dollars accrued interest thereon, both dated February 16, 1923, exe-

cuted by G. G. Glasgow, due and payable to the order of Mrs. Asenath Myrtilla Allen Buchanan, two and three years after date, respectively * * * ".

Further, the deed of trust provides that, the granted premises is the homestead of G. G. Glasgow and wife, was claimed, used, occupied and enjoyed by them as such, subject to the liens thereby extended and secured; and further, that all taxes on said premises, which may become due and payable, are also secured by said deed of trust.

The evidence is undisputed that, in 1923, James W. Glasgow and son, G. G. Glasgow, were desirous of acquiring adjacent homesteads, and that they decided to purchase from John S. Buchanan and wife, lots six (6) and seven (7), block 21, Junius Heights Addition to the City of Dallas, being a tract 160 x 272.6 feet. A division of the lot was agreed upon: G. G. Glasgow would have the east 85 feet (lot seven (7) and the east 5 feet off of lot six (6), and J. W. Glasgow would have the west 75 feet of said lot six (6); and it was also agreed that, when one-half of a series of notes to be given as part of the purchase price for said lots was paid, the west 75-foot lot would be released.

In keeping with said agreement, on February 16, 1923, John S. Buchanan and wife conveyed by general warranty deed to G. G. Glasgow, lots six (6) and seven (7) in block 21, of the Junius Heights Addition to the City of Dallas, for a recited consideration of $2,000 cash, and the assumption and agreement by G. G. Glasgow to pay three $400 notes, secured by deed of trust on said lots, held by one B. R. Packard; the execution of three $2,022.21 notes, payable to Mrs. Buchanan in one, two and three years after date; and the assumption and agreement to pay $473.06 mechanic's paving lien against lot seven (7) and $473.06 paving lien against lot six (6). The deed specifically provides that:

"It being agreed and understood that no implied lien is hereby retained on lot No. Six (6) for any paving lien or note against lot No. Seven (7) and there is no implied lien on lot No. Seven (7) for any paving lien or note herein assumed which is a separate lien on lot No. Six (6). It is further agreed and understood that, when the said G. G. Glasgow, shall have paid as much as one-half of the three notes executed herein, that the said grantors will release the following described land; Be-

ing a strip of land 75 x 272.6 feet off the southwest side of said lot No. Six (6) next to and adjoining lot No. Five (5) from the lien securing said notes; and this agreement shall be binding upon the grantors herein, their heirs and assigns."

The deed concludes with the usual general warranty and vendor's lien clause, effectively creating a vendor's lien against all of the property therein described.

On April 14, 1923, G. G. Glasgow and wife conveyed to James W. Glasgow, by general warranty deed, 75 x 272.6 feet off of the west side of lot six (6) next to and adjoining lot five (5) in block 21, for a recited consideration of $1,000; and "subject to all of the liens of record against said property".

The three $400 notes recited in the first deed, above mentioned, were secured by a valid subsisting lien of record on the two described lots: Note 1 secured by 47 feet of lot seven (7); note 2, to the extent of $38/47$ thereof, by lot seven (7) and 5 feet of lot six (6); and the balance of note 2 ($9/47$) by the west 75 feet of lot six (6); and note 3 secured by the west 47 feet of the 75-foot lot six (6).

The appeal centers on the construction of, and the effect to be given to, the various instruments of record, which form the basis of appellee's said note and deed of trust.

The dominant purpose in construing written instruments is to ascertain the intention of the parties as expressed in the instrument itself; and such intention expressed therein is a controlling factor. Totton v. Smith et al., Tex.Sup., 113 S.W.2d 517. The rule is firmly settled in this State that, the intention of the parties must be gathered from the entire instrument, and not from some isolated clause or paragraph. The entire instrument must be considered as a whole, in order to arrive at the intention of the parties. Reynolds et al. v. McMan Oil & Gas Co. et al., Tex.Com.App., 11 S.W.2d 778.

Analyzing the above deeds, it will be seen that G. G. Glasgow assumed and agreed to pay the three $400 notes, due to B. R. Packard, the paving liens on each of the two lots, and executed three $2,022.21 notes to Mrs. Buchanan, as a part of the purchase price of said lots. By force of the deed, these assumed and created liens were conditionally spread over the entire

tract of land, 160 x 272.6 feet; restricted only by the limitation clauses recited therein: First, that no implied lien is retained on lot six (6) for any paving lien or note against lot seven (7); and none retained on lot seven (7) against lot six (6); and second, when the grantee shall have paid one-half of the three $2,022.21 notes to Mrs. Buchanan, the lien against the 75-foot lot six (6) would be released from the lien for the balance of said three notes. Also, it will be seen that the three $400 notes were express liens on three separate parcels of said lots; the first of said notes and $^{38}/_{47}$ of the second note were separate liens on lot seven (7), and the balance ($^{9}/_{47}$) of the second note and all of the third note were separate liens on lot six (6). Thus, when James W. Glasgow purchased this property, lot six (6) was then burdened with the said separate lien securing $476.59 of the three Packard notes, and lot seven (7) with $723.41 thereof; and each of said lots were burdened with a paving lien in the sum of $473.06, and with the three $2,022.21 Buchanan notes. The deed from G. G. Glasgow to James W. Glasgow expressly recognized the burden then existing on the 75-foot lot, wherein is recited that the lot was "subject to all of the liens of record against said property".

We think that the two deeds effectively segregated the existing liens against the two tracts of land, whereby the 85-foot lot retained by G. G. Glasgow was relieved of the lien securing $476.59 of the Packard notes, the paving lien against lot six (6), and one-half of the three $2,022.21 Buchanan notes, when same shall have been paid.

■ The record shows that, prior to the transactions involved, the first of the Buchanan notes was paid, the second transferred to Mrs. Phebe Ella Glasgow, wife of James W. Glasgow. Thus, under the contractual relationship existing between G. G. Glasgow and James W. Glasgow and wife, the 75-foot lot being their community homestead, Mrs. Glasgow was vested with an estate in the land. Woods et al. v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35. When the first of the Buchanan notes was paid and note 2 acquired by Mrs. Phoebe Ella Glasgow, same operated to release the Buchanan vendor's lien and discharge the notes' indebtedness as against the 75-foot lot; and then, the 85-foot lot, owned by G. G. Glasgow, became burdened with the remaining one-half of the second Buchanan note, owned by Mrs. Glasgow; and the third of said series of notes, owned by Mrs. Buchanan.

On July 20, 1926, the above lien-holders assigned to the John Hancock Mutual Life Insurance Company their respective notes and liens, with the accrued interest thereon: Mrs. Phebe Ella Glasgow and her husband, James W. Glasgow, assigned their interest in all of note 2, in the sum of $2,022.21, with $349.59 of accrued interest thereon; Mrs. A. M. A. Buchanan assigned note 3, in the sum of $2,022.21 with $71.45 of accrued interest; B. R. Packard assigned all of his three $400 notes, with $48 accrued interest; and the Uvalde Paving Company assigned its paving lien in the sum of $186.54, aggregating the sum of $5,900. In each of the assignments is provided: "It being hereby agreed and understood that the lien herein transferred shall be against 85 x 272.6 feet, known as lot seven (7), and five (5) feet off of lot No. 6, only * * * and the balance of said lands (75 x 272.6 feet) * * * is hereby released".

A literal application of these statements leads to no other conclusion than that the liens then existing against the 75 x 272.6-foot lot, owned by James W. Glasgow and wife, to the extent of $1,681.49, were shifted to the 85-foot lot owned by appellants, at a time when it was being used and occupied by them as their homestead.

■ The difficulty with appellee's situation is that, with full knowledge of all facts, it disregarded appellants' homestead exemption and arbitrarily accepted liens which were shifted and imposed upon appellants' homestead, to the extent of $1,011.11 of the Buchanan's second note, with $174.79 of the accrued interest, and $476.59 of the Packard notes, with $19 accrued interest, which items were segregated and secured by the 75-foot lot. This, neither appellant nor the lien-holders could effectively do. Art. 16, sec. 50, State Const. The Insurance Company acquired no greater right in the notes and liens than the original payees had, same being only as against appellants' homestead, to the extent of the purchase money actually due against it; and the balance of such lien is void and unenforceable.

The cause was submitted to a jury on special issues, and the jury's findings not being inconsistent with the above recorded instruments, the trial court entered judgment in favor of appellee and against ap-

pellant G. G. Glasgow, for $5,900 principal, with $598.46 accrued interest, $647.81 attorney's fee, $241.57 taxes paid by appellee, and $42.14 insurance premiums, aggregating sum of $7,430.98; also against G. G. Glasgow and wife, Georgia Maud Glasgow, for foreclosure of the deed of trust and vendor's lien, as same existed on July 20, 1926, on the tract of land—85 x 272.6 feet —known as lot seven (7) and 5 feet off of lot six (6), in block 21, Junius Heights Addition to the City of Dallas, and all improvements thereon, in satisfaction of said judgment, excepting therefrom the $42.14 insurance premiums.

■ Appellants also assign error on the action of the trial court, in foreclosing the deed of trust lien on the house and garage on lot seven (7), which, according to the evidence and findings of the jury, was the separate property of Mrs. Glasgow, placed upon the land subsequent to the creation of the lien indebtedness, and occupied by her as her home. It is doubtful whether the evidence sustains the findings of the jury; be that as it may, the improvements were on the lot at the time the Insurance Company extended the deed of trust lien on the property; the Company had no knowledge of the existence of the wife's ownership of the improvements, separate and distinct from her community interest in the realty; she and her husband were living on the property, and the improvements were permanent fixtures thereon. The house and garage being permanent fixtures on the land, merged into the realty, became a part of it; therefore, the trial court correctly held that the improvements were subject to the lien indebtedness.

According to our conclusion, as above expressed, the judgment of the lower court is reformed, reducing the lien indebtedness and foreclosure, on appellants' homestead to the extent of $1,681.49, on the principal, $169.73 on the accrued interest, and $185.12 on the attorney's fees, and as reformed the judgment of the trial court is affirmed.

We have carefully considered all assignments of error not herein discussed; they are overruled; the judgment of the trial court is. reformed in the particulars above stated, and as reformed, is affirmed.

Reformed and affirmed.

## On Motion for Rehearing.

■ In our original opinion, we expressly stated that, "The appeal centers on the construction of, and the effect to be given to, the various instruments of record, which form the basis of appellee's said note and deed of trust", thus demonstrating that appellee, at the time of the loan transaction, knew nothing other than the recorded instruments affecting the liens and the arrangement of homesteads by G. G. Glasgow and his father, J. W. Glasgow. Appellee knew that the Glasgows were living upon the respective lots—85 x 272.6 and 75 x 272.6 feet—as their homesteads, and was charged with knowledge of all instruments of record in the chain of title. The extent of the liens transferred to appellee and which form the basis of its note and deed of trust, as they affect G. G. Glasgow's homestead (85 x. 272.6 feet) is the dominant question in this appeal. If the liens, when they were created, extended over both lots, then the question is: May the owner of the lots and the lien-holders release one homestead and transfer the existing liens against it to another's homestead, thus pyramiding the indebtedness and liens on the latter's homestead?

■ Appellee concedes that, at the inception of their creation, the liens forming the indebtedness sued on spread over the entire 160 x 272.6-foot lot; if that be true, the lien on J. W. Glasgow's homestead cannot be subsequently released and the lien transferred to the homestead of G. G. Glasgow. Each of the homesteads must be burdened with its proportionate part of the indebtedness lien, and the release of one homestead from the liens against it cannot burden the other homestead with its payments. Const. Art. 16, Sec. 50.

■ Appellee earnestly insists that the three $400 (Packard) notes, being originally segregated liens on three distinct separate parcels of the two lots (numbers 6 and 7 in block 21), they became merged and the lien spread over the entire body of the two lots perforce of a subsequent deed from J. S. Buchanan to his wife, Mrs. Asenath Myrtilla Allen Buchanan, dated January 2, 1922, conveying lots 5, 6 and 7 in block 21/1617 of the City of Dallas. The consideration recited in the deed is "$3,000 cash and the assumption of an indebtedness of $1,200". It will be noted that reference to this deed has been made in appellee's motion for rehearing, no mention being made of it in briefs or otherwise. Under such circumstances, we do not think our failure to mention or comment upon the deed in our original opinion can be called in question. However, a cursory review of

893

the deed clearly shows that it makes no mention of the three $400 Packard notes, and there is no evidence in the record that the $1,200 indebtedness, assumed by the grantee (Mrs. Buchanan) was intended by the parties to cover said notes; and, of course, we may not assume that such assumption refers to them. Analyzing the deed in the light of the record, we think the liens at the time of their creation were effectively segregated, as to make each of the lots, which afterwards became homesteads of the Glasgows, bear its proportionate part of the liens.

In view of the earnestness of able counsel, we have been constrained to again review the record in its entirety, but finding no reason to change the conclusion heretofore reached, the motions for rehearing of both appellants and appellee are overruled.

Overruled.