J. D. Woods et al. v. Alvarado State Bank.

No. 4462.   Decided June 29, 1929.
(19 S. W., 2d Series, 35.)

*J. M. Moore* and *Warren & Russell,* for plaintiff in error.

When a homestead has been once acquired the subsequent death, marriage or removal of all individuals who composed the family except the surviving husband does not subject the homestead to forced sale under a judgment against him when he still occupies it as a home. Taylor v. Boulware, 17 Texas, 74; Kessler v. Draub, 52 Texas, 575; Blum v. Gaines, 57 Texas, 119; Bahn v. Starcke, 89 Texas, 250, 34 S. W., 113; Zapp v. Strohmeyer, 75 Texas, 638, 13 S. W., 10; Childress v. Henderson, et al., 13 S. W., 401; Hargenden v. Whitfield, 71 Texas, 482; Speer & Goodnight v. Sykes, 119 S. W., 86; Hall v. Field, 81 Texas, 553; Elliot v. Thomas, 143 S. W., 563 (Mo.); Palmer v. Sawyer, 103 N. W., 1088; Silloway v. Brown, 12 Allen (Mass.) 30; Kimbrel v. Willis, 97 Ill., 494; Stanley v. Snyder, 43 Ark., 429; Beckman v. Meyer, 75 Mo., 333; Webb v. Conley, 5 Lea, (Tenn.) 722; Stultz v. Sale, 92 Ky., 5, 17 S. W., 148, 13 L. R. A. 743; Pardo v. Bertorf, 48 Mich., 275, 12 N. W., 164; Barney v. Leeds, 51 N. H., 253; Wilkinson v. Merrell, 87 Va., 513, 12 S. E., 1015, 11 L. R. A., 632; Towne v. Rumsey, 5 Wyo., 11, 35 Pac., 1025; Moore v. Parker, 13 S. C., 486; Suter v. Quarles, 58 S. W., 990 (Ky.).

The fact that the custody of the minor children was awarded to the wife does not relieve the father of the legal duty to provide support and education for such children. This duty is imposed upon him even though the custody of the children is exercised by the wife, and such duty becomes much greater when the actual care and custody of the children is exercised by the father. Speer & Goodnight v. Sykes, 119 S. W., 86; Zapp v. Strohmeyer, 13 S. W., 9; Hull v. Field, 81 Texas, 553, 17 S. W., 82; Wolf v. Buckley, 52 Texas, 541; Kessler v. Draub, 52 Texas, 575; Bahn v. Starcke, 34 S. W., 103; Blum v. Cains, 57 Texas, 119.

*E. A. Rice,* for defendant in error.

The uncontradicted evidence of appellant, J. D. Woods, showing conclusively that he was not the head of a family in any sense, nor the surviving husband of a deceased wife, at the time he became indebted to appellee on July 3, 1919, nor at any time thereafter, nor

at the time of his making the pretended deed to the 228 acres of land to his daughter in March, 1920, before the maturity of his debt to appellee, and further showing that he was not and had not been the head of a family either actual or constructive in any sense for ten years or more preceding said transactions, appellant had no homestead exemption claim to the 104.3 acres of land or any part thereof at the time of the pretended sale of same to his daughter nor at any time thereafter, and the court having found that said sale was without consideration deemed valuable in law, said land was and is subject to appellee's execution for its debt against said appellant. First National Bank v. Sokolski, 131 S. W., 818; Bahn v. Starcke, 34 S. W., 103; Comstock v. Lomax, 110 S. W., 762; Comstock v. Lomax, 135 S. W., 185; Stevens v. Cobern, 213 S. W., 925; Davis v. Cuthbertson, 45 S. W., 426; Blum v. Gaines, 57 Texas, 121; Skinner v. Walker, 34 S. W., 233 (Ky.).

When a homestead is acquired during the existence of the marriage relation, upon the death of either spouse, the homestead exemption is continued during the life of the survivor, although occupied by such spouse alone. But this continuance of the homestead protection after the "family" ceases to exist does not apply to a homestead acquired by the surviving spouse after the severance of the marriage relation, even by the death of the other spouse. As to such person the right depends wholly upon the existence of a family and others standing toward him in such relation as to constitute the whole a family within the meaning of the term as used in the Constitution.

The children of appellant Woods at the date of the pretended conveyance to his daughter and at the date of the levy not being constituents of such family, and Woods alone not constituting a family entitled to homestead protection, the 104.3 acres of after-acquired land was and is subject to appellee's execution. Kessler v. Draub, 52 Texas, 579, 36 Am. Rep., 727; Blum v. Gaines, 57 Texas, 123; Roots v. Robertson, 55 S. W., 308; First National Bank v. Sokolski, 131 S. W., 818; Bahn v. Starcke, 34 S. W., 103; Roco v. Green, 50 Texas, 491 and authorities under preceding propositions.

Mr. Chief Justice CURETON delivered the opinion of the court.

A clear statement of this case will be found in the opinion of the Court of Civil Appeals, 275 S. W., 187.

At the time of the divorce decree the plaintiff in error, Woods, had two minor children, who, though awarded to their mother, continued to live with him, and for the support of whom, whether living with him or not, he was at all times liable. Plainly he continued to be the head of a family, and as such entitled to all the homestead privileges and rights granted by the Constitution and laws of the State. Hall v. Fields, 81 Texas, 553, 17 S. W., 82; Speer & Goodnight v. Sykes, 102 Texas, 451, 119 S. W., 86; Zapp v. Strohmeyer, 75 Texas, 638, 13 S. W., 9; Shook v. Shook, 145 S. W., 682. However, in the course of time plaintiff in error's daughter, after going to her mother in Oklahoma, married there and ceased to be a constituent member of his family. The son, too, finally became of age, departed from the homestead, moved to another State, and there married. At the time of the divorce decree Woods owned 104 acres of land impressed with the homestead character, and between that date and the departure of his son, while the latter was a constituent member of his family, Woods acquired the additional land involved. Since Woods was the head of a family at the time he acquired the additional land, he was entitled to a 200 acre homestead under the Constitution, and had any levy been attempted while his children, or either of them, were constituent members of his family, the levy would have been void and of no avail. Constitution, Art. 16, Secs. 50, 51. The question here presented, however, is whether or not the dissolution of the family by the marriage and removal of his daughter, and the departure of his son, who had become of age, destroyed the homestead rights of the plaintiff in error, although at all times he has lived upon, occupied, and made use of the lands involved as a home, in the same manner that he had done while the children were constituent members of his family. We have reached the conclusion, upon both reason and authority, that his homestead rights were not destroyed. The question is one of first impression, although there are expressions in the opinions of this Court of a definite character, made apparently after due consideration, which support our conclusion. We have found great conflict in the decisions, but on the whole have concluded that the line of authorities which holds that the dissolution of the family does not destroy the homestead rights of the surviving head, so long as he or she remains on the homestead and uses it as such, is more consistent with and applicable to the homestead sections of the Constitution and our statutory provisions than those authorities which hold to the contrary. The rule that homestead laws are to be liberally construed to effectuate their

beneficent purpose is one of general acceptation. 29 Corpus Juris, p. 787; 13 Ruling Case Law, p. 547; Trawick v. Harris, 8 Texas, 312; Schneider v. Bray, 59 Texas, 668. There are, of course, authorities to the contrary, but this Court at an early date (1852) declared the rule ' stated to be the one applicable in this State. Trawick v. Harris, supra. Generally it may be said that there are two concepts of the effect of constitutional and statutory provisions relating to the homestead. One is that these laws confer a mere privilege of exemption, which operates to prevent the use of the process of the court to sell certain property for the payment of debts. The other is that the homestead right is considered an estate in land vested in the person designated by law. 13 Ruling Case Law, pp. 541, 542; 29 Corpus Juris, pp. 784, 785. We believe the division in the authorities on this question, as to whether the homestead right is a mere privilege or an estate, roughly marks the dividing line between those which hold that the dispersal of the family destroys the homestead right and those which adhere to the doctrine that the homestead right survives the destruction of the family ensemble. There is also a division of opinion as to the purpose of homestead laws. Some authorities hold that they are enacted primarily for the benefit and protection of the family alone, and that they operate through the exemption to the head of the family for the benefit of the family as a shield against his imprudences or misfortunes; while others declare that these laws are for the protection of the individuals who compose the family, as well as the family entity itself. 13 Ruling Case Law, 543, 545. As corollaries, in part at least, from these conflicting conceptions of the effect of homestead laws, some States have adopted the rule that since the homestead is primarily for the family only as such, when the family ceases to exist, due to any dispersal of its units, the homestead in favor of the head of the family ceases; while those which adhere to the view that the homestead is not alone for the family as a unit, but for those who compose it as well, adopt the rule that the disruption of the family by death or permanent removal of its members, except the head, does not destroy the homestead right. 29 Corpus Juris, 931, 932. In view of our constitutional and statutory provisions concerning homestead rights, we have concluded that in this State the homestead is to be regarded as an estate created not only for the protection of the family as a whole, but for the units of the family, including those who survive, and embracing the head of the family at the time of its dissolution, whether the dissolution has been brought about by death or by dispersal,

as distinguished from a mere privilege accorded the head of the family for the benefit of the family as a whole.

The history of the subject in this State supports this conclusion. The first homestead law, the Act of the Congress of the Republic, was a mere exemption statute, and protected the homestead and certain personal property from execution. Gammel's Laws, Vol. 2, 120, 125; Hartley's Digest, Art. 1270.·

The homestead was exempted, along with personal property, from the writ of execution (*"fieri facias"*), or, in the language of the text writer above used, in giving the two views as to the effect of homestead laws, the Act of 1839 was "merely an exemption which operates to prevent the use of the process of the court to sell certain property for the payment of debts." 29 Corpus Juris, 784.

The Congress of the Republic, however, was not satisfied with a mere exemption of the property specified in the Act of 1839, so by a law passed January 9, 1843, it also exempted this property from sale for debts by the probate court, and set apart the property for "the sole use and benefit of the widow and children of the deceased." Hartley's Digest, Arts. 1061, 1062. This was a distinct departure from a mere exemption statute, and certainly provided for an estate similar in purpose to the Common Law Estate in Dower. 9 Ruling Case Law, 560; Cooley's Blackstone (3d Ed.), Vol. 1, p. 128.

The first constitutional provision of Texas relating to homesteads was that of 1845, which read:

"Sec. 22. The Legislature shall have power to protect by law from forced sale· a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land (not included in a town or city) or any town or city lot or lots in value not to exceed two thousand dollars, shall not be subject to forced sale, for any debts hereafter contracted, nor shall the owner if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the Legislature may hereafter point out." Hartley's Digest, p. 73; Gammel's Laws, Vol. 2, p. 1294.

It is to be noted that here Texas for the first time (apparently) separated the exemption from forced sale of personal property, by a power conferred upon the Legislature, from the homestead exemption. As to the latter, the limits were defined, and the liberty of sale on the part of the husband was restricted until the wife's consent was obtained in the manner provided by law. By·this provision the land thus reserved as exempt to the owner was impressed

with a vested constitutional right of the wife not only to forbid alienation, but she could with the concurrence of her husband exchange the homestead for another, or could sell and invest the proceeds in a different home. In fact, it was not merely the wife's right of possession and use which could not be sold without her consent, but the very land itself. Stallings v. Hullum, 89 Texas, 431, 432, 433, 35 S. W., 2. This constitutional provision, taken in connection with the Probate Act of 1843, setting apart exempt property for the sole use and benefit of the widow and children of the deceased, as amended, enlarged, and made effective by the Act of 1846, had the effect of creating vested rights in the beneficiaries. Green v. Crow, 17 Texas, 180, 186. When the allowance is made to the widow and children under these Acts, title becomes absolute; or, as this Court has said: "In fact, the estate of a widow and children in such allowance is as absolute as that of the widow and children to their reasonable parts by the ancient common law or custom of London." Green v. Crow, supra, 188. (See Cooley's Blackstone (3d Ed.), Vol. 1, pp. 516, 517.

Under the constitutional provision in the organic law of 1845, which persisted as a part of all subsequent constitutions of this State: 1861, 1866, 1869, 1876, (Gammel's Laws, Vol. 5, pp. 20, 877; Vol. 7, p. 422), taken in connection with the Probate Act of 1843 and amendments, supra, although the wife might not own the fee, or any part of it, in the exempted lands, yet she did have an estate in them, to-wit: the homestead, vested and absolute, of which she could not be deprived except by alienation upon her own consent, evidenced with the formalities prescribed by law, and which upon the death of her spouse became a life estate as certain and absolute as such an estate could become. Green v. Crow, 17 Texas, 180.

Following the adoption of the Constitution of 1845, relating to the homestead, the Legislature in compliance with the provision quoted, separated personal property exemptions from homestead exemptions, and as to the latter began the enactment of the elaborate system of laws which we now have on the subject. Our present Constitution was adopted by the people in 1876, since when the homestead sections 50, 51, and 52, of Art. 16, have read as follows:

"Sec. 50. The homestead of a family shall be, and is hereby, protected from forced sale for the payment of all debts, except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing

improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage or trust deed or other lien shall have been created by the husband alone or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

"Sec. 51. The homestead not in a town or city shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village shall consist of lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

"Sec. 52. On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or as long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having jurisdiction, to use and occupy the same."

Section 50 exempts "the homestead of a family" from forced sale, prohibits alienation except on consent of the wife, and prohibits all liens except for purchase money, improvements, etc. But the section does not define either a homestead or a family, nor does it state when the right of exemption shall cease, or for whose benefit the exemption was created, whether for the entire family or for the units of that family as well.

Section 51 defines the homestead, and in so far as here involved makes it consist of 200 acres of land with improvements "used for

the purposes of a home." This section gives no further definition of either a home or a family.

Section 52 prescribes the constitutional rule as to the descent of a homestead. It prescribes that on the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and be governed by the laws of descent and distribution; but it does prevent the homestead property from being partitioned among the heirs of the deceased during the lifetime of the surviving wife or husband, so long as the survivor chooses to occupy it, and so long as the guardian of the minor children may be permitted by law to occupy it. Certainly here is created life estates, inchoate perhaps as to all except the husband and wife until the death of the fee owner, but estates which then do mature and become effective.

We have referred to the similarity of the estate of the surviving wife to the Dower Estate. On the other hand, the homestead rights of the surviving husband are comparable to the Common Law Estate by Courtesy. 8 Ruling Case Law, p. 387; Cooley's Blackstone (3d Ed.) Vol. 1, p. 124. In fact, when the constitutional provisions and statutes relating to the homestead are analyzed, we think the conclusion is inescapable that their purpose and effect is to create estates as distinguished from mere privileges of exemption or possession. In fact, the text of Washburn on Real Property declares:

"The right of homestead, which has been established by statute, with greater or less stringency, in at least thirty-four of the States, partakes more nearly of the character of an estate for life than any other, and is treated of as coming within that category. Indeed, in some of the States it comes properly within that class of estates." Washburn on Real Property, pp. 353, 354.

Our courts have expressly declared that the homestead laws create estates. Hargadene v. Whitfield, 71 Texas, 482, 488, 9 S. W., 475; Parker v. Schrimsher, 172 S. W., 165; Stallings v. Hullum, 89 Texas, 431, 35 S. W., 2; Gonzales v. Gonzales, 115 Texas, 16, 273 S. W., 798.

Since the homestead right is an estate in land, it follows that the holder of the homestead estate can not be divested of his right except by alienation or abandonment, or by some character of process which would divest him of any other estate. Certainly the fact that his children become of age and leave the parental roof can not have that effect.

We think the homestead provisions of our Constitution and statutes beyond any question show a purpose not only to protect the family as a whole, but the constituent units of that whole. In plain terms, the Constitution and laws protect first the husband, wife, and children, jointly or as a family; second, they protect the surviving husband; third, they protect the surviving wife; fourth, they protect the surviving children, although some of them may be adults when the family unit is dissolved by death. Our Constitution and Statutes show definitely that in the development of our homestead law we have long since passed beyond the initial stage shown in the Exemption Act of 1839, and that stage of the law when it may be held that the head of the family is protected in homestead rights for the benefit of the family alone. Since it is plain that the general purpose of our homestead laws is to protect the individuals who compose the family, as well as the family, we think it would be a very illiberal construction to say that when once there is a family composed of father and minor children, the homestead, when the latter become of age and cease to be members of the household, the remaining constituent shall not be protected. Applying the liberal rule, we think that when once the homestead comes into existence by reason of the family composed of the father and minor children (not finding in the Constitution and laws any designated termination of that type of homestead estate), we are left free to say when it terminates, or rather we are left free to say that since the estate is created by the Constitution without limit as to its duration, we are not authorized to say when the estate shall determine, except it may of course cease by alienation, abandonment, or by laws such as apply to the divestiture of other estates. This construction is in accord with the humane principles and wise governmental policy upon which all homestead laws rest. Any other construction would cast homeless upon the world the aged father or mother, who though separated from his or her spouse (except by death during marriage), had reared a family of children, who, becoming of age, had departed from the home. We know there is a great conflict of authority on the question, and that some reason and logic may be applied in support of the rule that would take the homestead from the aged and destitute, who have reared a family without death bringing into application the provisions of Section 52 of the Constitution; but neither reason nor logic can say that a homestead law which turns the aged and weary out of home because the constituent, or constituents, of his or her home have left its

shelter, fulfills the general and underlying purposes of our homestead laws. A rule that father or mother surviving the death of his or her spouse, raising children who became of age and who left the parental home, can still hold the homestead against all creditors and heirs, but that an old grandmother owning a homestead, with a family composed of orphan grandchildren, who finally became of age and left, could no longer be protected, cannot be explained upon any principle which has been invoked as the basis of our homestead laws; and if we were to say in this case that Woods is not protected here, we would be compelled to say the same thing regarding the case used for illustration above. The hardships entailed by the breaking up of such a home as plaintiff in error's here may be just as desolating and burdensome as if the home had been broken by death and the homestead preserved by survivorship of the husband; and there exists the same personal reason and the same public policy for preserving one as for the other.

In view of the fact that our homestead laws are for the protection of each member of the homestead household, as well as the home itself, those authorities which hold that homestead rights are not destroyed by the dispersal of the members of the family are applicable. In fact, the opinions of this Court support the rule we have here announced. In the case of Bahn v. Starcke, 89 Texas, 203, 208, 34 S. W., 103, 59 Am. St., 40, this Court said with reference to the cases of Kessler v. Draub, 52 Texas, 579, 36 Am. Rep., 727, and Blum v. Gaines, 57 Texas, 119:

*"In those cases it was held that when the head of a family, either by death or dispersion of its members, ceases to have a family, the homestead will remain exempt."*

In the case of Blum v. Gaines, 57 Texas, 119, this Court said:

"We are asked in this appeal (and this is the sole question presented for our consideration) to reconsider and overrule the case of Kessler v. Draub, 52 Tex., 575, in which it was held that, when a homestead has been once acquired, the subsequent death, marriage or removal of all the individuals who composed the family, except the surviving husband, does not subject the homestead to forced sale, under a judgment against him, he still occupying it as a home."

\*     \*     \*     \*     \*     \*

"There is a marked distinction between the right of a widower who is not the head of a family to acquire a new homestead in the first place, and the right to retain the already existing homestead, after the dissolution of the family by death or otherwise. As to the

acquisition of a new homestead, he would stand on the same ground as a bachelor or spinster, but in the retention of the old homestead he occupies, both in the policy and language of the law, a much more favorable standpoint. There is something repugnant in the proposition, that, to the sorrow of losing his family, should be added the misfortune that his home should be taken from him by forced sale; and that, too, for a debt for the payment of which it was not believed, either by himself or the creditor, at the time of its creation, that the homestead would be liable, and for the security of which it did not enter as an element of credit.

"We think, both on reason and authority, that the rule announced in Kessler v. Draub, 52 Tex., 574, is sound, and the doctrine of that case is reaffirmed."

The case of Bahn v. Starcke, supra, makes no holding contrary to the above. What it did decide was an entirely different question.

In the case of First National Bank v. Sokolski, 131 S. W., 818, the question now before us was presented to the Court of Civil Appeals and decided contrary to our holding. We have examined the application for writ of error, however, (which was refused), and the question was not presented to the Supreme Court.

The elementary authorities support our conclusion. 29 Corpus Juris, p. 932; 13 Ruling Case Law, p. 666, Sec. 123; Thompson on Real Property, Vol. 1, Secs. 937, 938. The first authority cited states:

"On the other hand, in many jurisdictions it is held that after a homestead has once been acquired, it is not dependent on the continued existence of a family, and that it is not lost by the death, permanent removal, or majority of all the members of the family other than the head thereof, but continues to be exempt so long as the premises are occupied as a home." 29 Corpus Juris, p. 932.

The second declares:

"While there is a conflict in the authorities on the point, the general rule is that one who has acquired a homestead does not lose his right to the exemption, so long as he continues to use the property as his home, although, because of death or removal, the family is completely broken up. This rule applies whether the family is broken up by separation or by the death of some of the members thereof, or by the coming of age of the children, and it is based on the hypothesis that the intention of the legislature in enacting the various homestead statutes was to protect the home and all its inmates, including the head of the family as well as the

dependent members, from any business misfortune and financial adversity that might befall them. Some courts, however, looking on statutes providing for a homestead exemption as statutes of nurture, intended solely for the protection of the dependent members of the family from the improvidence of the head thereof, hold that on the dissolution of the family by the death or removal of its members, the reason for the protection ceasing, the head of the family loses his right to a homestead exemption previously acquired. So it has been held that where children have arrived at their majority, and have permanently severed their status as members of the immediate family and taken up their abode elsewhere, the father, on the death of the mother, ceases to be the head of a family so as to be entitled to a homestead exemption. In general, however, while it is necessary that a homesteader should have persons dependent on him for support, and residing with him, in order to constitute a family, it is not necessary that this should be true in order to retain an existing right to a homestead." 13 Ruling Case Law, pp. 666, 667, Sec. 123.

In Thompson on Real Property, cited above, the author says:

"Some cases hold that while it is essential to the creation of a homestead that the debtor have a family, such requirement is not essential to the continuance of the right. If the family consists of the husband and wife only, their death simultaneously will of necessity destroy the homestead right, as there is no one to claim it. 'Although a homestead estate cannot be acquired except by a householder having a family, yet, when once acquired and still occupied by him, it is not defeated or lost by the death or absence of his wife and children. Any other construction would render a husband who has been deprived of his family by accident or disease, or by their desertion without any fault of his, liable to be turned out of his homestead by his creditors.' "

\*　\*　\*　\*　\*　\*

"As a general rule the complete breaking up of the family for any cause, does not operate to forfeit the homestead right of one who has acquired it and continues to use the property as a home." Thompson on Real Property, pp. 1033, 1034, Secs. 937, 938.

Decisions from other States support our conclusion. Wilkinson v. Merrill, 87 Va., 513, 11 L. R. A., 632, 12 S. E., 1015; Elliott v. Thomas, 161 Mo. App., 441, 143 S. W., 632; Butt v. Walker, 177 Ark., 371, 6 S. W. (2d) 301; Baldwin v. Thomas, 71 Ark., 206, 72 S. W., 53; McNichols v. McNichols, 299 Ill., 362, 132 N. E., 448; Martin v. Cox, 199 S. W. (Mo.), 185; Kimbrel v.

Willis, 97 Ill., 494; Bank of Versailles v. Guthrey, 127 Mo., 189, 48 Am. St., 621, 29 S. W., 1004; Beckmann v. Meyer, 75 Mo., 333; Conner v. Mason, 143 Ky., 635, 137 S. W., 235; Rothwell v. Rothwell, 104 S. W. (Ky.), 276; Suter v. Quarles, 58 S. W. (Ky.), 990.

In the case of Wilkinson v. Merrill, cited above, the family which entitled Wilkinson to a homestead consisted of himself and little grandson, nine or ten years of age. The grandson was enticed away from home by Gruslow, a creditor of the grandfather, who took the child on an excursion down the Potomac river. The child never returned; and its body was found in the river some days afterwards. Gruslow, the creditor, was heard to say with reference to Wilkinson: "The old rascal is gone now. He can't claim the homestead now. Johnny is gone. He was drowned last night."

The only question which the Virginia Supreme Court was called upon to determine was whether or not, after the death of the child, its grandfather was still entitled to the homestead exemption. The Court held that he was, and said in part:

"The question here is whether the homestead exemption provided by the Constitution of the State is intended by that instrument for the householder and his family, or exclusively for the family other than himself. The 5th section of art. 11 of the Constitution, mentioned above, provides that the General Assembly shall, at its first session, under this Constitution, prescribe in what manner and upon what conditions the householder or head of a family shall thereafter set apart and hold, for himself and family, a homestead out of any property hereby exempted, and may in its discretion determine in what manner and on what conditions he may thereafter hold for himself and family such personal property as he may have, and coming within the exemption hereby made. It is evident that the framers of that instrument intended that when a person was once entitled to be placed in the attitude of a householder or head of a family, and had his homestead exemption set apart for him, it was so set apart for the benefit of himself as well as of his family other than himself. These are plain provisions: *the householder or head of a family is himself a part of the family. The exemption is, however, not only for the benefit of the family, but for his benefit also. Having been set apart for his benefit, and also for the benefit of his family, it would be an illiberal construction of the provision of the Constitution to hold that, if he survived the other members of his family, this provision would no longer shield him against his creditors, but cease and determine, and*

*at the end of a long life, it may be devoted, to his family, that he should be uncovered and exposed to the creditors and the debts which had been accumulating during the years that he had been devoting his life and his property to the maintenance of his family.* This humane provision, which this court has so often declared to be a shield, would be thus forged into a sword suspended for a time over his head by a thread as slender as the tenure of life of a little child, whose life would be the sole barrier to the creditor whose interests interrupted, and when this slender thread was cut by disease or by an unscrupulous murder, as it may have been in this case, a sword which, descending, would destroy and not protect. If we are to construe this constitutional provision liberally, so that all the interests thereof may be fully and perfectly carried out, we must not disregard the benefits provided for the. householder, and consider only the benefits provided for the other members of the family. *It appears to us to be the just and proper construction of this provision to hold that, having once been established by law, the homestead exemption continues at least as long as the householder shall continue to live and occupy the domicil provided for the benefit of himself and his family.* To hold otherwise would be to hold that the constitutional provision for his benefit was of no effect, but exclusively for the benefit of the other members of his family." (Italics ours.) 11 L. R. A., 633.

It is unnecessary to quote from other authorities, since all are available.

Without discussing the matter further, we hold that Woods was entitled to his 200 acre homestead, and that the trial court should have set apart that amount of land to him or his vendees.

The judgments of the Court of Civil Appeals and District Court are both reversed, and the cause remanded with direction to the trial court to only determine and set apart to the plaintiff in error the 200 acre homestead of Woods, and to perpetuate the temporary injunction as to that, and to permit a sale under execution of any excess over the homestead of the lands levied on.