**BANK OF SAN ANTONIO et al.**

v.

**Jeremy R. RENALDO.**

**No. 5598.**

Court of Civil Appeals of Texas, Eastland.

May 21, 1981.

Rehearing Denied June 11, 1981.

Craig L. Austin, San Antonio, for appellant.

Lonnie W. Duke, San Antonio, for appellee.

McCLOUD, Chief Justice.

The controlling question in this case is whether a divorced parent established that the property in question was his homestead at the time it was mortgaged. We hold that he did not.

Jeremy Renaldo sued the Bank of San Antonio and Robert L. Dautterman seeking a declaratory judgment that a deed of trust lien claimed by the bank is not a valid lien against his homestead. The bank and Dautterman filed a cross action seeking a judicial foreclosure of the security interest. The trial court, in a nonjury case, ruled that

the property was Renaldo's homestead at the time he executed the deed of trust. The bank and Dautterman appeal. We reverse and render.

On September 24, 1973,[1] Renaldo, a single man, executed a deed of trust covering the property in issue (which will be hereinafter referred to as 602 Santa Monica) to secure the payment of a $14,500 promissory note. The deed of trust named Dautterman as trustee. The note was executed for payment of pre-existing commercial debts, and did not represent money advanced by the bank for the purchase of the property, or for payment of taxes or improvements.

Jeremy Renaldo married Patti Polk Renaldo in 1968. Jeremy and Patti, together with her three children of a prior marriage, resided at 110 Brittany in Bexar County. This home was purchased by Patti in 1964 as her separate property. On March 28, 1972, Renaldo and Patti entered into a property settlement agreement, "in contemplation of divorce," which provided that the 110 Brittany residence would remain the separate property of Patti, and that Renaldo was to receive the house at 602 Santa Monica. The following day, Jeremy Renaldo purchased 602 Santa Monica from third parties. Jeremy and Patti separated on August 22, 1972, and Patti filed suit for divorce on September 5. A decree of divorce was signed on December 5, 1972, which incorporated a "Property and Child Support Agreement" providing that the agreement signed by the parties on March 28, 1972, would be of no further force and effect. Under the divorce decree entered on December 5, 1972, the house at 602 Santa Monica became the separate property of Jeremy. The agreement incorporated in the divorce decree provided that Patti Renaldo would have custody of the unborn child or children of the marriage and that Jeremy would make periodic child support payments and have certain rights of visitation. Following the divorce, Patti gave birth to a son on December 19, 1972.

After the purchase of the 602 Santa Monica residence on March 29, 1972, the Renaldo family did not move into the home because according to Jeremy, "Patti didn't want to go there." Jeremy testified that he bought the house with the intention to move his wife into his "own house" with him. The house was rented to tenants. When the parties separated in August, Jeremy moved into an apartment. Jeremy testified that he moved into the house sometime around the time of the divorce, and that he has occupied the home at 602 Santa Monica from that time.

Renaldo contends he properly proved that the house at 602 Santa Monica was the family homestead at the time of the divorce. We disagree.

■ The homestead claimant has the burden of proof as to every fact essential to the existence of an asserted homestead. *Savell v. Flint*, 347 S.W.2d 24 (Tex.Civ.App.—Eastland 1961, writ ref'd n. r. e.). Although Jeremy Renaldo abandoned the Brittany residence sometime in 1972, following the agreement made in contemplation of divorce, there is no evidence that he actually occupied 602 Santa Monica prior to the divorce on December 5, 1972. Renaldo testified at trial that, "I don't really remember if I was there before the actual cut off date of the divorce or not. I had an apartment at the same time also." As stated in *Cheswick v. Freeman*, 155 Tex. 372, 287 S.W.2d 171 (1956): "In order to impress upon property a homestead character in the absence of actual occupancy, the head of the family must have intended to reside thereon with his family as a home and that intention must be evidenced by overt acts of preparation." *Sims v. Beeson*, 545 S.W.2d 262 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.); *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.).

■ The Renaldos were occupying 110 Brittany as the family homestead and could

---

1. Effective January 1, 1974, Tex.Rev.Civ.Stat. Ann. art. 3833 (Vernon Supp.1980–1981) was amended to provide "a single, adult person, not a constituent of a family," a homestead exemption.

not acquire a new homestead in the absence of abandonment of that homestead. *Floyd v. Rice*, 444 S.W.2d 834 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.). The mere intention to occupy property as a homestead at some indefinite future date is not sufficient to raise an issue of fact on the question of homestead. *Davis v. McClurkan*, 378 S.W.2d 358 (Tex.Civ.App.—Eastland 1964, no writ). Moreover, there is no evidence of any overt acts of preparation of Renaldo toward establishing 602 Santa Monica as the new family homestead.

*Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35 (1929), urged by Renaldo, is distinguishable. There, the father continued to occupy the family homestead following the divorce. Here, Renaldo failed to establish that 602 Santa Monica was the homestead at the time of the divorce. In view of this holding, it is unnecessary for us to decide if the marriage was "childless," the child of the marriage having been born following the divorce.

■ Renaldo filed a petition in bankruptcy on April 26, 1976, and the order discharging the bankrupt was signed on June 29, 1976. The property at 602 Santa Monica was claimed by Renaldo to be exempt property. The setting aside of a homestead to a judgment debtor does not affect the rights of those who hold valid liens on the property. *Johnson v. Prosper State Bank*, 125 S.W.2d 707 (Tex.Civ.App.—Dallas 1939), *aff'd*, 134 Tex. 677, 138 S.W.2d 1117 (1940).

The judgment of the trial court is reversed and judgment is here rendered that the bank's deed of trust is valid, and the lien created by such deed of trust is hereby judicially foreclosed.