Jeremy R. RENALDO, Petitioner,

v.

BANK OF SAN ANTONIO, et
al., Respondents.

No. C–562.

Supreme Court of Texas.

April 7, 1982.

Lonnie W. Duke, San Antonio, for petitioner.

Craig L. Austin, San Antonio, for respondents.

McGEE, Justice.

This is a suit for declaratory judgment to determine the validity of a deed of trust. The primary question presented in this cause is whether a divorced husband who is under a legal obligation to support his child could and did establish a homestead prior to the 1974 amendments to the Texas homestead laws.[1]  The trial court, sitting without a jury, rendered judgment declaring the deed of trust void as against the asserted homestead exemption.  The court of civil appeals reversed the trial court's judgment and rendered judgment denying the homestead exemption and declaring the deed of trust valid.  626 S.W.2d 318.  We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Jeremy and Patti Renaldo were married in 1968.  The couple established a home at 110 Brittany in San Antonio, Texas, where they lived until their separation on or about August 22, 1972.  On March 28, 1972, Jeremy and Patti entered into an agreement in

---

1. Effective January 1, 1974, Tex.Rev.Civ.Stat. Ann. art. 3833 was amended to provide a homestead exemption to "a single, adult person, not a constituent of a family."

contemplation of divorce whereby Patti would receive as her separate property the residence at 110 Brittany and Jeremy would receive as his separate property a house at 602 Santa Monica in San Antonio, Texas. The following day Jeremy purchased the 602 Santa Monica property from third parties.

A decree of divorce was rendered on December 5, 1972. The first child of the marriage was born December 19, 1972, two weeks after the divorce. The divorce decree incorporated the March 28 property settlement agreement and further provided that Patti would have custody of the child, that Jeremy would make periodic child support payments, and that he would have certain visitation rights.

Jeremy moved onto the 602 Santa Monica property around the time of divorce and has continued to live there without interruption. Jeremy's son lived with his mother most of the time but was a frequent visitor at his father's house. While the divorce decree provided for visitation of only 2½ hours per week, there was testimony at trial that the child often spent the night with Jeremy, and that the child had his own room at Jeremy's house.

On September 24, 1973, Jeremy executed a deed of trust covering the 602 Santa Monica residence to the Bank of San Antonio. The deed of trust was requested by the Bank to secure a pre-existing commercial debt. None of the money received from the Bank was used to purchase, pay taxes on, or improve the property in question. Jeremy brought this suit to declare the deed of trust invalid, asserting that the 602 Santa Monica property was his homestead.

In order to sustain his homestead claim, Jeremy had the burden to prove he had established a family homestead in the Santa Monica property prior to the execution of the deed of trust. This necessarily involves evidence that he was part of a family unit at the time the property acquired its asserted homestead character. The court of civil appeals reversed the trial court's judgment on the basis that Jeremy failed to establish a homestead at 602 Santa Monica prior to his divorce. Apparently, that court was of the opinion that any homestead rights of a divorced person must have existed prior to the divorce. We disagree.

■ The cases clearly establish that a family unit entitled to a homestead may consist of a divorced person and a dependent child. *E.g., Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (1929); *Speer & Goodnight v. Sykes,* 102 Tex. 451, 119 S.W. 86 (1909); *Hall v. Fields,* 81 Tex. 553, 17 S.W. 82 (1891); *Zapp v. Strohmeyer,* 75 Tex. 638, 13 S.W. 9 (1890). This is true even though custody of the child may have been awarded to the other spouse, so long as the obligation for support continues and a genuine parent-child relationship exists. In *Schulz v. L. E. Whitham & Co.,* 119 Tex. 211, 27 S.W.2d 1093, 1095 (1930), we summarized the law in this area as follows:

> [A]lthough the husband and wife may be divorced, and although the children may have been awarded to her, and may not live with him, yet so long as they are minors, to whom he owes a duty of support, he is entitled to a homestead as the head of a family.

The Bank contends that this rule applies only if the divorced person is continuing to claim a homestead which was established prior to divorce, but that a separate homestead may not be dedicated after divorce.

While a number of the cited cases hold that a homestead *continues* through divorce where one spouse remains on the property, a single parent's homestead rights are not limited to that situation. In *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (1929), this Court upheld a 200-acre homestead exemption in a 228-acre tract belonging to J. D. Woods, even though he had acquired some of the land after his divorce. The trial court had sustained the homestead claim only as to the original 104 acres he had owned and occupied as a homestead prior to his divorce. On appeal, we held Woods was entitled to the full 200-acre exemption because he was the head of a family consisting of himself and a minor

son at the time he acquired the additional acreage. *Cf. Lane v. Phillips*, 69 Tex. 240, 6 S.W. 610 (1887) (single father of illegitimate children was entitled to claim a homestead exemption).

The fact that Jeremy's ex-wife, Patti, continued to reside at the couple's original homestead after divorce does not affect Jeremy's right to establish a separate homestead elsewhere. A divorced parent's right to a family homestead derives from the relationship to his or her children. As we stated in *Zapp v. Strohmeyer*, 75 Tex. 638, 13 S.W. 9, 10 (1890), "[t]he head of the family, or the two heads of families, that there may be after divorce, are entitled to hold their homesteads against forced sale...."

Jeremy proved that he was the head of a family and he was therefore entitled to establish a homestead. He introduced evidence that, prior to the execution of the deed of trust, he had occupied 602 Santa Monica with the intent of making it his home where his son could regularly visit. We affirm the trial court's judgment sustaining the homestead and declaring the Bank's deed of trust void.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.