Affirmed and Memorandum Opinion filed July 21, 2005









Affirmed
and Memorandum Opinion filed July 21, 2005.

 

                                                                              

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01030-CR

____________

 

EMMA G. BARRERA
AND NICKOLAS S. BARRERA, Appellants

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 427333-A

 



 

M E M O R A N D U M   O P I N I O N








Appellants, Emma G. Barrera and Nickolas
S. Barrera, appeal from the trial court=s final order
granting turnover relief to the State of Texas and appointing a receiver to
take possession of and sell certain real property owned by appellants.  The State had previously obtained judgments,
totaling $363,458.86, against Emma Barrera for twenty-two bail bond forfeitures
on which she was the surety.  The current
lawsuit is an attempt by the State to collect on the prior judgments.  Of importance to this appeal, a jury found
that (1) appellants abandoned their homestead interest in certain property in
Harris County, and (2) a ranch in Starr County was community property of
appellants subject to their joint management, control, and disposition.  Based on the jury=s verdict, the
trial court granted turnover relief on the Harris County and Starr County
properties and appointed a receiver, who was authorized to take possession of
and sell the properties to pay the prior judgments.

On appeal, appellants contend that (1) the
trial court erred in instructing the jury on the law regarding abandonment of a
homestead; (2) there is no evidence that Emma abandoned her homestead interest
in the Harris County property; (3) the trial court erred in refusing to ask the
jury when the homestead interest in the Harris County property was abandoned;
and (4) there is no evidence that the Starr County ranch was joint management
community property.  We affirm.[1]

The Evidence

The primary issues at trial were (1)
whether appellants abandoned their homestead interest in the Harris County
property, and (2) whether the Starr County ranch was community property subject
to joint management, control, and disposition. 
Regarding the first issue, appellants both testified that since 1967,
when they bought the Harris County property, they have always intended to keep
it as their homestead, except for one period when they were trying to sell the
property but the sale was not consummated. 
They further stated that at no point did they intend for any other
property to be their present homestead. 
They admitted that they moved back and forth between the Harris County
property and property they owned in McAllen. 
Emma stated that they live in Harris County most of the time, but
Nickolas stated that they were in McAllen most of the time.








In response, the State put on evidence,
mostly through questioning of appellants themselves, that they had established
a homestead in McAllen, thus abandoning the homestead interest in the Harris
County property.  This evidence included
that: they moved most of their furniture to McAllen, their checking accounts
are in the McAllen area, their driver=s licenses have
the McAllen address on them, they are registered to vote in McAllen, their
primary medical providers are in the McAllen area, the family photographs are
in McAllen, their magazines and bills go to the McAllen address, the address on
their tax return is the McAllen address, Nickolas ran various businesses from
the McAllen property, Emma has breathing problems that make it difficult for
her to be in Harris County, and Nickolas requires dialysis, which is easier for
him to schedule in McAllen. 
Additionally, their grown son and daughter currently reside at the
Harris County property, and their son sleeps in the master bedroom and pays all
the utilities.  They attend church in
both locales and have cars registered in both counties.  Emma acknowledged that she does most of the
shopping and cleaning at the McAllen property and that the utilities,
insurance, and other expenses for the property are paid out of their joint
checking account.  She said that she
signs the checks because of Nickolas=s failing
eyesight, although he approves the payments. 
The State also introduced a homestead designation signed by appellants
in 1995 naming the McAllen property as their homestead.  Nickolas testified that this was a mistake,
and a letter he wrote to the county appraisal district in 1999 asked for the
homestead designation to be corrected to list the Harris County property.  He said that he was billed for and paid the
difference in property taxes.  Nickolas
also admitted that he had previously been convicted of perjury.

The appellants did not and do not dispute
that the Starr County ranch was community property; however, they testified
that all of the funds used to purchase the ranch came from Nickolas=s separate income
and that he had sole management and control over the ranch.  They also introduced a quitclaim deed from
Emma disclaiming any rights, title, or interest in the ranch.  Nickolas appeared to acknowledge that this
quitclaim was signed because Emma should not have property in her name as a
bondsman because it could be taken to pay for forfeitures.








In response, the State submitted copies of
Emma=s applications for
renewal of her bondsman license, in which she stated alternately that the
property was community property and her sole property.  The State also elicited testimony from her
that she and her husband both made decisions regarding paying taxes on the
property.  The jury found that appellants
abandoned their homestead interest in the Harris County property and that the
Starr County ranch was community property subject to joint management, control,
and disposition.

Charge on Abandonment

In their first issue, appellants contend
that the trial court erred in instructing the jury on the abandonment of a
homestead.  In Question One, the court
asked, ADo you find from a
preponderance of the evidence that Nickolas Barrera and Emma Barrera abandoned
their homestead interest in the property located at 6934 Heron Drive, Houston,
Texas?@  In the General Instructions and Definitions
section of the charge, the court included the following regarding abandonment
of a homestead:

A family may not have more than one homestead.  Once a homestead is established, the
homestead character of property continues until it is abandoned.  The party asserting that homestead rights have
been abandoned has the burden of proof by a preponderance of evidence.  Abandonment is to be determined from all of
the evidence before the jury.  The
acquisition of a new homestead operates as an abandonment of a prior
homestead.  An abandonment of a homestead
may also be shown by the lack of a definite intention to return and use and
occupy the property as a homestead.








Appellants submitted a proposed
instruction that included several points similar to the submitted instructions
and added a few additional factors. 
Appellants maintain that their proposed submission is an accurate
statement of the law and thus should have been included in the charge.[2]  However, just because a proposed instruction
is an accurate statement of the law does not mean that the trial court must
submit it to the jury.  Instead, Athe trial court=s duty is to
submit only those questions, instructions, and definitions raised by the
pleadings and the evidence.@  Harris County v. Smith, 96 S.W.3d 230,
236 (Tex. 2002); see also Tex. R.
Civ. P. 277 (AThe court shall submit such instructions
and definitions as shall be proper to enable the jury to render a verdict.@).  A trial court has wide discretion in
determining the sufficiency of instructions and definitions.  Plainsman Trading Co. v. Crews, 898
S.W.2d 786, 791 (Tex. 1995).

We shall now address each of the sentences
in appellants= proposed submission and determine whether
they should have been submitted. 
Appellants= proposed submission reads as follows
(with numbers inserted for ease of reference):

[1.] Did Emma
Barrera and Nickolas Barrera abandon their homestead at 6934 Heron Dr.,
Houston, Texas?  [2.] If an owner of
property claimed as homestead is married, that owner may not abandon the
homestead without the consent of the spouse of the owner.  [3.] Once homestead rights are shown to exist
in property, they are presumed to continue, and anyone asserting abandonment
has the burden of proving it by competent evidence.  [4.] While occupying a property as homestead,
a person cannot establish a homestead right in another place by attempting to
live there in the future.  [5.] It is the
acquisition of a new homestead, not merely the acquisition of a new home, which
operates as an abandonment of homestead rights. 
[6.] Abandonment of a homestead requires both the cessation or
discontinuance of use of the property as a homestead, coupled with the intent
to permanently abandon the homestead. 
[7.] The evidence relied on as establishing abandonment of a homestead
must make it undeniably clear that there has been a total abandonment with an
intention not to return and claim the exemption.  [8.] The homestead claimant=s proceeds of a
sale of a homestead are not subject to seizure for a creditor=s claim for six
months after the date of sale.  [9.] The
proceeds of a voluntary sale of the homestead are protected from creditors for
six months, giving a reasonable time in which to invest the proceeds in another
home.

The first sentence is the basic question
on abandonment and is substantially similar to the question submitted by the
trial court.  Likewise, the third
sentence (concerning the continuance of a homestead interest until abandoned)
and the fifth sentence (concerning the acquisition of a new homestead) were
substantially similar to instructions submitted by the court.








Regarding appellants= second requested
sentence, concerning consent by one spouse to abandoning a homestead owned by
the other spouse, appellants cite no evidence, and we have discovered none,
suggesting that the Harris County property was owned by only one spouse.  To the contrary, the evidence was consistent
that the Harris County property was community property.  Accordingly, the trial court did not err in
refusing this instruction.

Appellants= fourth requested
sentence, concerning an attempt to live somewhere else in the future, is
apparently a reference to the fact that appellants tried to sell the Harris
County property at one point but the sale was not consummated.  The sentence was probably derived from cases in which a party
was attempting to claim a homestead interest in property that he or she had yet
to occupy.  See, e.g., Caulley v.
Caulley, 806 S.W.2d 795, 797 (Tex. 1991). 
There is also caselaw suggesting that evidence of an intent to occupy
certain property as a homestead at some future point is not sufficient to show
abandonment of a homestead interest in other property.  See, e.g., Bank of San Antonio v. Renaldo,
626 S.W.2d 318, 320 (Tex. App.CEastland 1981), rev=d on other grounds, 630 S.W.2d 638 (Tex.
1982).  However, this principle is not
presented in the sentence proffered by appellants.  Further, the State=s abandonment case
was predicated not on an alleged attempt to live somewhere in the future, but
on appellants= actual establishment of a homestead in
McAllen.  Thus, the trial court did not
abuse its discretion in refusing to include the fourth sentence in the charge.

The eighth and ninth sentences both deal
with situations in which a creditor attempts to seize proceeds from the sale of
a homestead.  It is undisputed that
appellants never sold the Harris County property; thus, there was no evidence
supporting submission of these sentences, and the trial court did not abuse its
discretion in refusing to submit them.

The issues raised in sentences six and
seven are more troubling.  These
sentences bear repeating:

Abandonment of a homestead
requires both the cessation or discontinuance of use of the property as a
homestead, coupled with the intent to permanently abandon the homestead.  The evidence relied on as establishing
abandonment of a homestead must make it undeniably clear that there has been a
total abandonment with an intention not to return and claim the exemption.








These are clearly correct statements of the law
regarding the elements that must be proven in order to establish
abandonment.  See, e.g., Burkhardt v.
Lieberman, 138 Tex. 409, 416, 159 S.W.2d 847, 852 (1942); Gouhenant v.
Cockrell, 20 Tex. 96, 98 (1857); Kendall Builders, Inc. v. Chesson,
149 S.W.3d 796, 808 (Tex. App.CAustin 2004, pet.
denied); Estate of Montague v. Nat=l Loan Investors,
L.P.,
70 S.W.3d 242, 248 (Tex. App.CSan Antonio 2001,
pet. denied); In re Estate of Casida, 13 S.W.3d 519, 521 (Tex. App.CBeaumont 2000, no
pet.).  The question of abandonment of
the Harris County property was hotly contested at trial.  Thus, we find that the court erred in
refusing to include language similar to sentences six and seven in appellants= proposed
instructions.

However, we will not reverse for charge
error unless we determine that such error probably caused the rendition of an
improper judgment.  Tex. R. App. P. 44.1(a); Wal‑Mart
Stores, Inc. v. Redding, 56 S.W.3d 141, 149 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  In making
this determination, we must consider the pleadings of the parties, the evidence
presented at trial, and the charge in its entirety.  Island Recreational Dev. Corp. v. Republic
of Tex. Sav. Ass=n, 710 S.W.2d 551, 555 (Tex. 1986).

In its pleadings, the State alleged that
appellants abandoned their homestead interest in the Harris County property by
acquiring a homestead interest in the McAllen property.  The charge correctly stated that A[t]he acquisition
of a new homestead operates as an abandonment of a prior homestead.@  See Silvers v. Welch, 127 Tex.
58, 62, 91 S.W.2d 686, 687-88 (1936); Sanchez v. Telles, 960 S.W.2d 762,
771 (Tex. App.CEl Paso 1997, writ denied); Norman v.
First Bank & Trust, Bryan, 557 S.W.2d 797, 801 (Tex. App.CHouston [1st
Dist.] 1977, writ ref=d n.r.e.). 
This is true because a family cannot have two homesteads at the same
time.  Silvers, 127 Tex. at 62, 91
S.W.2d at 687-88 (citing Tex. Const.
art. XVI, ' 51).

The trial court further instructed the
jury as follows regarding the acquisition of a homestead interest:








A Ahomestead@ is a dwelling constituting the
family residence, together with the land on which it is situated and the
structure connected therewith.  A person
may not have more than one homestead.

The party claiming that property is
a homestead has the burden of proof by a preponderance of evidence to establish
the homestead character of the property. 
To establish homestead rights, the claimant must show both overt acts of
homestead usage and the intention on the part of the owner to claim the land as
a homestead.

Ownership, possession, use,
occupancy, and residency are factors to be considered in deciding whether
property is a homestead.  It is a true,
fixed, and permanent home and principal establishment.  AResidence@ means domicile, that is one=s home and fixed place of
habitation to which he intends to return after any temporary absence.

A ADesignation of Homestead@ is a document
wherein a person (declarant) swears under oath that certain property is his/her
legal homestead.  This document, if
properly recorded, is prima facie evidence of the person=s intent to claim
the property designated therein as their homestead.  This presumption may only be rebutted by
clear evidence.

Because it was undisputed that at one time appellants
had a homestead interest in the Harris County property, these instructions were
principally relevant to the question of whether appellants subsequently
acquired a homestead interest in another property, i.e., the McAllen
property.  The evidence strongly supports
such a conclusion.








The State presented evidence that
appellants had moved most of their furniture to McAllen, their checking
accounts are in the McAllen area, their driver=s licenses have
the McAllen address on them, they are registered to vote in McAllen, their
primary medical providers are in the McAllen area, the family photographs are
in McAllen, their magazines and bills go to the McAllen address, the address on
their tax return is the McAllen address, and Nickolas ran various businesses
from the McAllen property.  Additionally,
Emma and Nickolas both have medical issues that make it easier for them to be
in McAllen, and their grown son and daughter currently reside at the Harris
County property.  Emma also testified
that she does most of the shopping and cleaning for the McAllen property.  The State further introduced a homestead
designation signed by appellants in 1995 naming the McAllen property as their
homestead.  Although, Nickolas testified
that this was a mistake that he later corrected, the jury certainly could have
considered it.  In response, appellants
asserted that since 1967, when they bought the Harris County property, they have
always intended to keep it as their homestead, except for when they tried to
sell it.  They further stated that at no
point did they intend for any other property to be their present homestead.

In summary, there was strong evidence
supporting the conclusion that appellants acquired a homestead interest in the
McAllen property, thereby abandoning their homestead interest in the Harris
County property.  Accordingly,
considering the pleadings, the evidence, and the charge as a whole, we cannot
say that the charge error probably caused the rendition of an improper
judgment.  See Silvers, 127
Tex. at 62, 91 S.W.2d at 687-88; Sanchez, 960 S.W.2d at 771; Norman,
557 S.W.2d at 801.  We overrule
appellants= first issue.

Evidence of Abandonment

In their second issue, appellants contend
that there is no evidence that Emma abandoned her homestead interest in the
Harris County property.  We utilize the
usual standards in considering this legal sufficiency challenge.  See City of Keller v. Wilson, 48 Tex.
Sup. Ct. J. 848, 850-64, 2005 WL 1366509, at *2-14 (Tex. June 10, 2005).  As described above regarding whether the
charge error was harmless, there was considerable evidence that both Emma and
Nickolas acquired a homestead interest in the McAllen property, thus abandoning
their homestead interest in the Harris County property.  Appellants emphasize that the deed to the
McAllen property is only in Nickolas=s name.  However, a spouse does not have to have his
or her name on a deed to possess a homestead interest in the property covered
by the deed; in fact, Texas law recognizes that a spouse can have a homestead
interest in the separate property of the other spouse.  See Tex.
Prob. Code Ann. ' 282 (Vernon 2003); Tex. Fam. Code Ann. ' 5.001 (Vernon
1998); Majeski v. Majeski, No. 03-03-00565-CV, 2005 WL 240414, at *3
(Tex. App.CAustin Feb. 3, 2005, no pet. h.);
Copeland v. Tarrant Appraisal Dist., 906 S.W.2d 148, 151  (Tex. App.CFort Worth 1995,
writ denied).  Thus, appellants= argument
regarding the absence of Emma=s name on the
McAllen deed is without merit.  We
overrule appellants= second issue.








Timing of Abandonment

In their third issue, appellants contend
that the trial court erred in refusing to submit a question to the jury
regarding when appellants abandoned their homestead interest in the Harris
County property.  Appellants assert that
because a lien cannot properly be levied against homestead property, if they
abandoned the homestead after the State attached its liens, the liens are
invalid.

Generally, any attempt to create a lien or
mortgage on homestead property is void unless it falls under one of the
exceptions provided in the Texas Constitution. 
Tex. Const. art. XVI, ' 50; Laster v.
First Huntsville Props. Co., 826 S.W.2d 125, 129 (Tex. 1991); Inge v.
Cain, 65 Tex. 75, 79 (1885); Estate of Montague v. Nat=l Loan Investors,
L.P.,
70 S.W.3d 242, 248 (Tex. App.CSan Antonio 2001,
pet. denied).  AA mortgage or lien
that is void because it was illegally levied against homestead property can
never have any effect, even after the property is no longer impressed with the
homestead character.@  Laster,
826 S.W.2d at 130; see also Inge, 65 Tex. at 79 (AWhat cannot >ever be valid,= is never valid,
and what is never valid, is always void.@).








Because of this principle, under Texas
law, judgment liens that have been properly abstracted cannot attach to a
homestead as long as that property remains a homestead.  Wilcox v. Marriott, 103 S.W.3d 469,
473 (Tex. App.CSan Antonio 2003, pet. denied); Cadle
Co. v. Harvey, 46 S.W.3d 282, 285 
(Tex. App.CFort Worth 2001, pet. denied); see also
In re Henderson, 18 F.3d 1305, 1308-09 (5th Cir. 1994).  However, a judgment lien attaches to real
property when the homestead interest in that property is abandoned.  Wilcox, 103 S.W.3d at 473; Cadle
Co., 46 S.W.3d at 285; Hoffman v. Love, 494 S.W.2d 591, 594 (Tex.
App.CDallas), writ
ref=d n.r.e., 499 S.W.2d 295 (Tex. 1973) (per
curiam); see also In re Davis, 170 F.3d 475, 482-83 & n.10 (5th Cir.
1999); Exocet Inc. v. Cordes, 815 S.W.2d 350, 352 (Tex. App.CAustin 1991, no
writ).[3]  In other words, a properly abstracted
judgment does not attach to homestead property but stands poised to attach at
the instant the homestead is abandoned. 
Thus, the timing of an alleged abandonment is not important; rather, it
is the fact of abandonment that controls. 
Accordingly, the trial court did not err in refusing to submit a
question to the jury regarding when appellants abandoned their homestead
interest in the Harris County property. 
Appellant=s third issue is overruled.

Evidence of Joint Management

In their fourth issue, appellants attack
the legal sufficiency of the evidence to support the jury=s affirmative
response to Question Three, asking whether the Starr County ranch was the
community property of Emma and Nickolas subject to their joint management,
control, and disposition.  Appellants
assert that, contrary to the finding, the evidence conclusively established
that the property was under Nickolas=s sole management.[4]  Generally, community property that is subject
to a spouse=s sole management, control, and
disposition is not subject to liabilities of the other spouse unless both
spouses are personally liable or the liability is tortious in nature and was
incurred during the marriage.  Tex. Fam. Code Ann. ' 3.202(b) (Vernon
1998).  Again, we utilize the normal
standards for this legal sufficiency challenge. 
See City of Keller, 48 Tex. Sup. Ct. J. at 850-64, 2005 WL
1366509, at *2-14.








Nickolas testified that the ranch was
originally purchased in both spouses= names.  However, he further testified that when Emma
entered the bail bond business, they agreed that the ranch and certain other
property would become his property and several duplexes that they owned would
become hers, so that she could use them as security for writing bail
bonds.  This alleged agreement was not
reduced to writing and was apparently entered into because, according to
Nickolas, a person entering the bail bond business should not have property in
his or her name; otherwise, it could be foreclosed upon for collection on the
bonds.

The ranch was not listed on Emma=s 1983 application
for a bondman=s license, but it was listed on personal
financial statements accompanying her 1985 and 1987 renewal applications.  The 1985 statement listed the ranch as
community property; the 1987 statement listed it as Emma=s sole property.

In 1990, Emma signed a quitclaim deed
granting all of her Aright, title, and interest@ in the ranch to Nickolas.  Appellants= primary argument
appears to be that because the quitclaim deed placed the property solely in
Nickolas=s name, it became
his sole management property and therefore was not susceptible of foreclosure
for Emma=s sole
liabilities, citing Tex. Fam. Code Ann.
' 3.104(a) (Vernon
1998) (ADuring marriage,
property is presumed to be subject to the sole management, control, and
disposition of a spouse if it is held in that spouse=s name . . . .@).[5]








The record contains some evidence of joint
control over the ranch.  When asked who
makes decisions regarding paying taxes on the ranch, Emma responded A[w]e do.@  It could further be rationally inferred from
Emma=s testimony that
she wrote any checks related to the property and that the payments came out of
appellants= joint account.  The jury was also free to consider the
quitclaim deed in the context of Emma=s having
previously listed the property as hers. 
Also before the jury was evidence of the apparent purpose for the deed:
avoiding the possibility that the ranch could be foreclosed upon for payment on
forfeited bonds.  The jury could have
reasonably inferred that despite the alleged agreement and the quitclaim deed,
appellants acted as joint managers of their properties, including the
ranch.  As trier of fact, the jury was
free to disregard appellants= self-serving
testimony regarding Nickolas=s having sole
authority over the ranch.  See Riddick
v. Quail Harbor Condo. Ass=n, Inc., 7 S.W.3d 663,
677 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

The evidence is legally sufficient to
demonstrate joint management of the ranch and to rebut any presumption
regarding sole management of that property. 
Accordingly, we overrule appellants= fourth issue.

We affirm the trial court=s judgment.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed July 21, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Frost.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  We previously
issued an opinion in this case reversing a grant of summary judgment and
dealing with other issues not before us in this second appeal.  See Barrera v. State, 130 S.W.3d 253
(Tex. App.CHouston [14th Dist.] 2004, no pet.).  A bond forfeiture action is a criminal
proceeding that utilizes the Rules of Civil Procedure.  Tex.
Code Crim. Proc. Ann. art. 22.10 (Vernon Supp. 2004); State v.
Sellers, 790 S.W.2d 316, 321 (Tex. Crim. App.1990); Kubosh v. State,
No. 01-04-00268-CV, 2005 WL 267701, at *3 (Tex. App.CHouston [1st Dist.] Feb. 3, 2005, pet. filed). 





[2]  Citing Tex. Const. art. XVI, ' 50(b); Tex.
Prop. Code Ann. '' 41.001(c), 41.004 (Vernon 2000); Caulley v.
Caulley, 806 S.W.2d 795 (Tex. 1991); Sanchez v. Telles, 960 S.W.2d
762 (Tex. App.CEl Paso 1997, pet. denied); Womack v. Redden,
846 S.W.2d 5 (Tex. App.CTexarkana 1992, writ denied); Jones v. Maroney,
619 S.W.2d 296 (Tex. App.CHouston [1st Dist.] 1981, no writ).





[3]  It should be
noted that in In re Henderson, the court surveyed relevant caselaw and
concluded that a judgment lien in Texas does not Aattach@ to homestead property so long as it remains homestead
property.  18 F.3d at 1308-09.  However, the court further determined that
under federal bankruptcy law, a judgment lien does A>fix,= i.e. fasten a liability against@ a homestead interest such that it could be the
subject of an action to avoid the lien.  Id.
at 1310-11.





[4]  Neither on
appeal nor in the trial court did appellants dispute that the property was
community property.  Indeed, during
closing argument, appellants= counsel repeatedly insisted that the property was
community property, that there was no dispute that it was community property,
and that the only dispute was regarding the rights of management, control, and
disposition.





[5]  This
presumption was not submitted in the jury charge, but appellants did request
that it be submitted.  We assume for the
sake of our discussion that the presumption should have been submitted.  But see Evans v. Muller, 510 S.W.2d
651, 655 (Tex. App.CAustin 1974), rev=d on other grounds, 516 S.W.2d 923 (Tex. 1975) (suggesting presumption only operates for
the benefit of third persons and not for the spouses).  Consequently, we measure the legal
sufficiency of the evidence in light of the charge that should have been
given.  See St. Joseph Hosp. v. Wolff,
94 S.W.3d 513, 530 (Tex. 2003); Tractebel Energy Mktg., Inc. v. E.I. Du Pont
De Nemours & Co., 118 S.W.3d 929, 932 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).