## W. J. EVANS & Co. v. S. A. PACE.

### Decided May 6, 1899.

1. **Homestead Exemption—Place of Business.**

A house and lot purchased by the owner of a mill and gin business and adjoining the gin property, used as a lodging or residence for his hired man employed to look after and attend to the gin, is not necessary for conducting the gin business so as to constitute it a part of the exempt business homestead.

2. **Same—Business Homestead Continues Exempt to Widow.**

A business homestead continues exempt to the widow while she uses it for the purpose of conducting the same business formerly carried on by her husband, although she is the sole surviving member of the family.

3. **Practice on Appeal.**

A judgment for plaintiff erroneously entered on the ground that the business homestead of defendant's deceased husband was not exempt while used by her, can not be affirmed on appeal on the ground that she had abandoned such homestead, where there was no finding by the trial court, as a matter of fact, as to abandonment, although the court did find on that point as a matter of law.

APPEAL from Henderson.   Tried below before Hon. W. H. GILL.

*Bishop, Eustice & McDonald,* for appellants.

*Simpkins & Mays* and *Paul Jones,* for appellee.

RAINEY, ASSOCIATE JUSTICE.—The appellee brought this suit to recover on an indebtedness due by appellants, a firm composed of Mrs. Mary D. Evans and C. E. Waldron.   Plaintiffs caused an attachment to be levied on certain real estate, of which two tracts were claimed, respectively, by the defendants as their business homesteads.   A recovery was had by plaintiffs for amount of the indebtedness sued for and foreclosing the attachment lien, from which this appeal is prosecuted.

As to the lots claimed by Waldron as his business homestead, the evidence shows that he was the head of a family, and that he and W. J. Evans, in the year 1894, formed a copartnership to conduct a mercantile business in the town of Malakoff, under the firm name of W. J. Evans & Co.   Prior to said year he owned a lot which he used for the purpose of carrying on a mill and gin business, and which business was conducted by him continuously to the time of the trial of this cause.   He attended to this business in person, and never had any other business homestead.

Subsequent to Waldron becoming the owner of the mill and gin property "he bought what is known as the Foster lot and house (the property in controversy) and connected same by fencing with the gin property,

using same thereafter as a lodging or residence for his hired man, whose duty it was to look after and attend to the gin. This place was never rented out, was never used for any other purpose after its purchase by Waldron, and no rent was charged its occupant, who was hired to attend to the gin and mill. This lot was contiguous to the gin lot and a convenient distance from the same for the man whose duty it was to look after the gin and mill."

This evidence fails to show that the property was necessary for conducting the mill and gin business, or put to such a use in connection with the conducting of the mill and gin business as to constitute it a part of the business homestead, and the court did not err in so holding. McDonald v. Campbell, 57 Texas, 614; Hinzie v. Moody, 1 Texas Civ. App., 26; Pfeiffer v. McNatt, 74 Texas, 640.

As to the lot claimed by Mrs. Evans as her homestead, the evidence shows that she is the surviving wife and only heir of W. J. Evans, deceased. At the time of his death he was doing a mercantile business in the town of Malakoff, in Henderson County, Texas. He had associated with him as a partner in said business C. E. Waldron, one of the appellants, the style of the firm being W. J. Evans & Co. The said business was conducted in a store building situated on lots 11 and 12 in said town. W. J. Evans also owned at his death a residence in which he and his wife lived, the wife being the only heir and constituent of his family. Upon his death the wife took his place in the mercantile business, and it was continued under the old firm name of W. J. Evans & Co. The new firm assumed the debts of the old firm, one of which was due plaintiff. Beside the debt due plaintiff by the old firm, the new firm contracted other indebtedness with plaintiff, goods being bought of and money paid him without distinguishing between the old and new indebtedness. After the new firm had conducted business for some months it made a deed of trust conveying to the trustees all property owned as a firm, and individually by its members subject to execution for the benefit of certain creditors therein named. The business house claimed by Mrs. Evans and the tract claimed by Waldron were not included, being claimed by them respectively as their business homesteads and exempt.

Two days after the trust deed was executed this suit was brought and the writ of attachment was levied on said real estate. Three weeks after the attachment was levied Mrs. Evans for value conveyed same to one Eustice.

Under this state of case the court below held that Mrs. Evans, being a feme sole and not the head of a family, and being personally liable for the debt sued for, she was not entitled to a "business homestead," and that the storehouse was not exempt.

The Constitution exempts from forced sale the homestead of a family, and in specifying a homestead in a city, town, or village, provides that it "shall consist of lot or lots not to exceed in value $5000 at the time of their designation as the homestead, without reference to any improve-

ments thereon; provided that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family." The provisions of the statute exempting the homestead is the same as the Constitution.

The Constitution also provides that on the death of the husband or wife the homestead "shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead."

It is contended by appellee that as the business homestead is exempt by the Constitution and statutes only to the head of a family, Mrs. Evans, not having a family after her husband's death, was not entitled to such exemption. We are of the opinion that the contention is not tenable. The Constitution and statute exempt a residence homestead to a *family*, yet our Supreme Court in construing the foregoing constitutional and statutory provisions has held that where the husband and wife own a residence homestead and either one dies, the homestead character is not changed thereby, but is exempt to the survivor so long as the same is used by the survivor as a home, although there may be no other constituent of the family. Blum v. Gaines, 57 Texas, 119; Kessler v. Draub, 52 Texas, 575; Watkins v. Davis, 61 Texas, 414. We know of no decisions where this construction has been applied to the business homestead, but we see no reason why it should not. There is nothing in said provisions that warrant a different construction. At the time of W. J. Evans' death the business house was exempt. Had he lived and his wife died, we think there could be no question as to his right to hold the business house exempt from forced sale so long as he used it for pursuing his business therein. The law makes no difference in this respect between the husband and wife, so when W. J. Evans died, the business house being exempt, it so descended to her and so remained until she failed in business, she having used it for the purpose of conducting a mercantile business from the time her husband died until her failure in business, and it so remained until she sold it, unless, as a matter of fact, she abandoned it as such after her failure.

Appellee insists, however, that there was an abandonment of the business house as a place for carrying on business by her. If this be true, then the judgment of the court is correct, though founded on the proposition that Mrs. Evans was not the head of a family and could not hold the storehouse as a homestead. From the state of the record we are unable to determine this question. Whether or not there was an abandonment was a fact which should have been determined by the trial court. There was no finding by the trial court, as a matter of fact, as to abandonment, though as a matter of law, the court found there was not. There is no statement of facts in the record from which we could determine as a matter of law that there was an abandonment, and as this fact should have been settled by the court below, we are not authorized to affirm the judgment on this ground. Edwards v. Chisholm, 6 S. W. Rep., 558.

The finding of the court as a matter of law that there was no abandonment being favorable to appellants, no assignments of error were presented by him on this ground, nor does appellee present any cross-assignment of error. We therefore have not discussed this feature as a ground of reversal, but merely to call attention to this omission of the court in view of another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*