**FEDERAL PETROLEUM CO. v. PITTMAN et ux.**

No. 1168.

Court of Civil Appeals of Texas. Eastland.

Oct. 20, 1933.

Rehearing Denied Dec. 8, 1933.

L. H. Welch, of Breckenridge, for appellant.

Bailey W. Hardy, of Breckenridge, for appellees.

HICKMAN, Chief Justice.

L. O. Blocker and A. B. White, doing business under the name of Federal Petroleum Company, caused a writ of execution to issue upon a judgment in their favor against S. D. Pittman, and be placed in the hands of J. W. Morrow, sheriff of Stephens county. In obedience to the writ, the sheriff levied upon and advertised for sale the following described property: Filling station located at 1401 East Walker, lot 1, block 30, 50 feet on Walker street and 90 feet on Graham avenue, East Breckenridge addition, situated in Stephens county, Tex.

Prior to the date said property was to be sold, Pittman and wife Mrs. Harriette Pittman, filed with the district judge their petition praying for a temporary injunction re-straining the judgment creditors and the sheriff aforesaid from selling or attempting to sell said property under said execution, and further praying that, upon hearing, the injunction be made permanent. The ground for the injunction was that the property levied upon and advertised to be sold was the homestead of the Pittmans. The temporary injunction was issued as prayed for, and, at a later date, after a hearing, same was made permanent, and this appeal followed.

The case was tried before the court· without the aid of a jury. In response to the request of the appellants, findings of fact and conclusions of law were filed by the trial judge. These fact findings were based upon undisputed ·evidence and are adopted by this court. They are as follows:

"Findings of Fact.

"I find that the plaintiff S. D. Pittman purchased lot No. 1 of block No. 30 of the East Breckenridge addition to the town of Breckenridge, Tex., in July, 1920, but that he did not secure a deed to the same until the 6th day of January, 1923.

"I find that lot No. 1 of block No. 30 of the East Breckenridge addition to the town of Breckenridge fronts north 50 feet on Walker street; west 180 feet on Graham avenue, and south 50 feet on Williams street.

"I find that S. D. Pittman· and Harriette Pittman are husband and wife, and were such long prior to July, 1920.

"I find that at the time of the purchase of the said lot in 1920, the lot was vacant, but that shortly thereafter the plaintiffs erected a building upon the northwest corner of said lot, which building was used jointly as a filling station and as a residence of the plain-, tiffs.

"I find that such building ·was used and occupied by the plaintiffs as· a residence and filling station for approximately four years, at which time the plaintiffs·erected a four-room residence upon about the middle of the lot, facing west on Graham avenue, and thereafter resided in said residence and continued to operate the filling station as such.

"I find that lot No. 1, block No. 30, at the time of its purchase and designation as a homestead by the plaintiffs was of the value of about $1,600.

"I find that in 1927, the plaintiff S. D. Pittman was advised by physicians that it was necessary for him to go to New Mexico, Arizona, or some dry climate, for his health, and that pursuant thereto, he rented the said filling station by the month to other parties and did go to New Mexico.

"I find that the said plaintiffs were absent less than one year, and upon their return to Breckenridge again took over the operation of the filling station and continued

to operate the same until January, 1930, when the plaintiffs, on account of the health of S. D. Pittman, were again compelled to leave and go to San Angelo, Tex.

"I find that shortly before going to San Angelo, Tex., the plaintiff S. D. Pittman leased the filling station in question to the Humble Oil & Refining Company for a period of five years, and rented their residence upon said lot to other parties.

"I find that the plaintiffs stayed in San Angelo, Tex., approximately fifteen months before returning to Breckenridge.

"I find that while in San Angelo, Tex., the plaintiff S. D. Pittman was engaged in operating a truck for hire, and upon his return to Breckenridge continued in such business, using the garage and a part of the lot which was under lease to the Humble Oil & Refining Company as headquarters for his trucking business.

"I find that immediately after returning to Breckenridge from San Angelo, the plaintiff S. D. Pittman made an effort to get possession of the filling station which was under a five-year lease to the Humble Oil & Refining Company, and that he did succeed in getting possession of the said filling station by a release from the Humble Oil & Refining Company dated the 8th day of August, 1932.

"I find that at no time since 1920 the plaintiffs ever owned or occupied any other property, other than lot No. 1 of block No. 30, East Breckenridge addition to Breckenridge, Tex., as either their residence or business homestead.

"I find that the plaintiffs have never abandoned either the business or the residence homestead erected on said lot No. 1 of block No. 30, and that, except for the periods of time temporarily absent because of the ill health of S. D. Pittman, plaintiffs were continually in actual possession of said property, using and occupying the same, both as a residence and a place of business, and that such was their homestead on the date of the judgment and execution in the suit entitled and numbered 10526, Federal Petroleum Company v. S. D. Pittman, in the district court of Stephens county, Tex."

■The controlling question presented is whether or not appellees abandoned the business homestead originally established by them. It is not claimed that during the time appellees resided in the same building as that in which the filling station was located, and during the time they resided in the residence erected on the south part of the same lot and operated their filling station, the entire property was not exempt to them as a homestead. The claim is that, as a matter of law, the business homestead was abandoned. One of the most difficult questions connected with the homestead law is that of abandonment,

but it may be said to be the unanimously accepted rule that there must be an intent on the part of the head of the family permanently to abandon and cease to use the property for homestead purposes before an abandonment will be decreed. Among the leading authorities on the question, we cite the following: Shepherd v. Cassiday, 20 Tex. 24, 70 Am. Dec. 372; Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177, 178; Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586.

■The fact findings by the trial judge well support the conclusion that appellees never formed the intention permanently to abandon this property as a whole for homestead purposes, and no discussion of that question would be profitable.

■As we understand the position of the appellants, it is, in effect, that while the fact findings would support the conclusion that appellees had not abandoned the south half of the lot, upon which is situated their residence homestead, a different rule applies in determining whether they had abandoned the north end of the lot, upon which the filling station is located, and which is claimed as a business homestead. In other words, the claim is that the rules for determining whether a residence homestead has been abandoned do not obtain in determining whether a business homestead has been abandoned. With this contention we cannot agree. This question is discussed in Alexander v. Lovitt (Tex. Civ. App.) 56 S. W. 685, 686, in this language: "A voluntary discontinuance of business is given the same weight on the question of abandonment as is given to a removal from home. In one case, as in the other, the remaining question of fact necessary to be ascertained in order to determine whether abandonment exists is that of intention. If the removal of the family from the home, or the voluntary discontinuance of the calling or business, be without intent in the one case again to use the property as a home, or in the other to resume the old business or pursue some other on the property, then abandonment exists."

Mr. Nunn, in his excellent text on the homestead, has this to say on the question:

"The cessation of business, like the removal from the home, does not within itself divest the property of its homestead character, but leaves this character dependent alone upon the intent of the head of the family. Such intent must be determined from all of the facts and circumstances in the case, and the burden of proof is upon the one who seeks to show that the property has lost its homestead character, and upon such trial, as in other instances where the homestead is dependent on intent, the homestead claimant may testify as to his intent with reference thereto.

"While the rules for determining the aban-

362

donment of a residence homestead and a business homestead are substantially the same, this does not mean that similar facts should be given the same probative force in each instance. Thus, the financial inability of the head of the family to acquire another residence homestead may be a circumstance tending to show that there was no intent to abandon the old residence homestead; while the financial inability of the head of the family to again engage in business would on the other hand, be a circumstance tending to show that there was no intent to again engage in business and no intent to again use the property as a place of business." (Nunn on Exemptions, pp. 168, 169.) See, also, Bowman v. Watson, 66 Tex. 295, 1 S. W. 273.

It is claimed that the petition upon which the injunction was granted is insufficient as a pleading of exemption of the business homestead. The allegations with reference to the homestead character of the property are as follows:

"These plaintiffs would further show to the Court that they are the owners of Lot 1, Block 30, East Breckenridge Addition together with all improvements thereon, which said property is the same property that the defendants are threatening to sell in satisfaction of said judgment, and they would further show to the court that they have been the owners of said property and in possession thereof since on or about the first of October, 1920, making their home thereon and living upon said property, using, occupying and claiming the same since said time as their homestead. That the said plaintiffs are now residing upon said premises, owning the same and using the same as their homestead. That the said plaintiffs have no other real estate in the State of Texas, and during all of the time from on or about October 1st, 1920, have used and occupied said premises as a homestead, and have been possessed of the same as community property during all of said time, and except for a small period of time when they were temporarily residing in San Angelo, Texas, they have actually occupied and used said premises continuously as their homestead.

"That for a greater portion of the time since 1920 to the present time, the plaintiffs have not only lived upon said premises, but have operated a Filling Station located thereon for and in behalf of themselves, and intend now and have intended for sometime to operate said Filling Station when the temporary lease upon said premises has expired or been cancelled."

"These allegations, in our opinion, are sufficient to support the judgment.

The contention that the court erred in permitting S. D. Pittman to testify with, re-

gard to his intent cannot be sustained. Intent is of the essence of his right to claim the homestead exemption, and it is settled that the claimant may testify with reference thereto. Aultman & Co. v. Allen, 12 Tex. Civ. App. 227, 33 S. W. 679; Locke v. Bonnell, 14 Tex. Civ. App. 354, 37 S. W. 250; Alexander v. Lovitt (Tex. Civ. App.) 56 S. W. 685.

There is no error in the judgment, and it is accordingly affirmed.